F I L E D
United States Court of Appeals
Tenth Circuit

AUG 1 2001

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NATHANIEL MONROE, JR.,

Defendant-Appellant.

No. 00-1475

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-CR-365-M)

Brian K. Holland, Holland & Pagliuca, P.C., Denver, Colorado, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney, District of Colorado (with Thomas L. Strickland, United States Attorney, and Sean Connelly, and James R. Allison, Assistant United States Attorneys, with him on the brief) for Plaintiff-Appellee.

Before **HENRY** , **BALDOCK** , and **BRISCOE** , Circuit Judges.

**HENRY** , Circuit Judge.

Nathaniel Monroe appeals the district court's imposition of a sentence

under the criminal sexual abuse guideline, USSG § 2A3.1, contending that the

court erred and should have applied the kidnapping, abduction, or unlawful restraint guideline, USSG § 2A4.1, to his offense. Mr. Monroe pleaded guilty to kidnapping and admitted in the plea agreement that he aided and abetted his codefendant, Anthony Albert, in the kidnapping of the victim. For the reasons set forth below, we affirm.

## I. BACKGROUND

On September 30, 1999, at approximately 7:30 p.m., the victim, who was then under the age of eighteen, agreed to drive two men she had not previously met, to a fastfood restaurant. Mr. Albert was in the front seat and Mr. Monroe was seated in the backseat of the vehicle.

While at the drive-through, Mr. Albert punched the victim with his fist on the right side of her face and told her to turn right. He displayed a stun gun and threatened to use it on her. Mr. Monroe at this time had wrapped the victim's hair in his hand and was pulling her head backwards over the top of the seat.

While Mr. Monroe was holding the victim by her hair, Mr. Albert walked around the car and assumed the driver's position in the vehicle. At approximately this time, the victim noticed Mr. Monroe was holding a knife to her neck. Mr. Albert again punched the victim in the face and asked her where the highway was. After the victim told Mr. Albert where the highway was, he

again punched the victim in the face and ordered her not to cry. At this time Mr. Albert also shocked her twice with the stun gun.

As they drove, Mr. Monroe continued holding and pulling the victim's hair while Mr. Albert made various threatening statements to the victim. Mr. Albert told the victim that if she made one wrong move, they would kill her. The victim also reported that Mr. Albert repeatedly used the stun gun on her.

After a stop at a gas station, Mr. Albert pulled off on a frontage road and the two men switched places, with Mr. Monroe driving the vehicle and Mr. Albert sitting in the back seat. At this time they ordered the victim to go into the back seat. Mr. Monroe gave Mr. Albert the knife.

After approximately another hour in the vehicle, Mr. Albert returned to the back seat of the vehicle and Mr. Monroe again drove. The victim was not allowed to leave the vehicle.

While Mr. Monroe was driving the vehicle, Mr. Albert ordered the victim to remove her shoes, pants, and underwear. Mr. Albert then raped her and ordered her to put her clothes back on.

After the sexual assault, the vehicle was stopped at a second gas station. After the second fuel stop, Messrs. Monroe and Albert switched places in the vehicle with Mr. Monroe now sitting in the back seat with the victim. While Mr. Monroe was sitting in the back seat, he ordered the victim to put her hand down

the front of his pants and fondle his penis.  The victim refused but complied when Mr. Monroe told her that she was not going to leave until he ejaculated.

According to the victim, Mr. Albert later stabbed her in the throat.  Mr. Albert then stabbed her a second time and ordered her to get out of the vehicle.  Mr. Monroe then opened the passenger side door and pulled her by her hair from the vehicle.  The victim fell from the vehicle and rolled down a small hill and began running from the car.

The victim was rescued by a truck driver and transported to the intensive care ward of a Russell, Kansas hospital.  The treating physician described her five stabbing wounds as life threatening.

Louisiana police officers apprehended Messrs. Albert and Monroe on October 4, 1999.  The next day Mr. Monroe, after having waived his Miranda rights, advised the police that he and Mr. Albert had left Colorado Springs in the victim's car after seeing Mr. Albert's photograph displayed on television concerning his being a suspect in a homicide.  He stated that he was not sure if Mr. Albert had done anything as far as hitting the victim.  He stated that he had dozed in the back seat while Mr. Albert drove the vehicle for some period of time.

Mr. Monroe admitted that at one time he began driving the vehicle and Mr. Albert was in the back seat with the victim.  When asked if this was when Mr.

Albert had sex with the victim, Mr. Monroe stated, "I guess so."  Rec. vol. I, doc. 87, at 9 (plea agreement).  Mr. Monroe stated that, after Mr. Albert had sex with her, he thought he would have sex with her as well.  He admitted to the sexual contact as described by the victim but stated that he had not hurt the victim.

Mr. Monroe also denied that he pulled the victim from the car by her hair after the victim was stabbed.  Mr. Monroe stated that he did not know that Mr. Albert was going to stab the victim.  Mr. Monroe acknowledged that he was aware that Mr. Albert possessed a stun gun but denied knowing that Mr. Albert had ever used it on the victim.

Mr. Monroe did, however, admit that he held onto the victim's hair from the back seat when Mr. Albert went to a gas station.  He stated that he did this so she would not leave.  Mr. Monroe also admitted that Mr. Albert apparently wanted the victim to think that he had a gun and would say things intended to frighten the victim.  Mr. Monroe also admitted that the had a knife in his possession, but he denied showing it to the victim.

Mr. Monroe was charged with one count of violating 18 U.S.C. §1201(a)(1), the knowing and unlawful kidnapping and carrying away of a minor and the willful transportation of a minor, against her will, in interstate commerce from Colorado to Kansas.  On June 16, 2000, Mr. Monroe pleaded guilty to a single count of kidnapping as charged in the indictment.

Mr. Monroe's pre-sentence report ("PSR") concluded that, during the course of the victim's abduction, she was physically and sexually assaulted by both Messrs. Monroe and Albert, stabbed five times, and left by the roadside. The PSR therefore recommended that the offense sentencing guideline for criminal sexual abuse be applied.    See USSG § 2A3.1. The PSR also recommended a four-level increase from the base offense level of 27 under USSG § 2A3.1(b)(1) for commission of the offense by the means set forth in 18 U.S.C. § 2241(a)(2), aggravated sexual abuse through the use of threats or fear. Finally, the PSR recommended a guideline sentencing range between 235 and 293 months for the kidnapping count, based on a total offense level of 36 and a criminal history category of III.

Mr. Monroe objected to the PSR's recommendations. First, he denied involvement in the sexual abuse of the victim and argued that the relevant offense guideline should therefore be USSG § 2A4.1, the kidnapping guideline. Mr. Monroe also maintained that the conduct of codefendant Mr. Albert should not be attributable to him as relevant conduct because the sexual assault and infliction of life-threatening injuries were not "reasonably foreseeable." Defendant's Objections to PSR & Sentencing Memo ¶ 1 (dated Oct. 10, 2000). He contended that the only "jointly undertaken" activity between him and Mr. Albert was the abduction of the victim solely for the purpose of fleeing Colorado.    Id.

-6-

The district court held an evidentiary hearing and found by a preponderance of the evidence that Mr. Monroe kidnapped and sexually assaulted the victim. It also found by a preponderance of the evidence that Mr. Monroe was jointly culpable for the actions of his codefendant in endangering the life of the victim and his further sexual assault of the victim. See Rec. Vol. I, doc. 111, at 6-7 (findings and conclusions on application of sentencing guidelines, filed Nov. 1, 2000); Rec. vol. V, at 65 (sentencing hr'g tr., dated Nov. 9, 2000 ). The court thus applied the "criminal sexual abuse" base offense level of 27, see USSG § 2A3.1(a), and added a four-level enhancement under 2A3.1(b)(4) for the life-threatening injury, and a four-level enhancement under 2A3.1(b)(1) for forcing the victim to engage in a sexual act by means of threats of fear. The court then made a four-level enhancement under § 2A3.1(b)(5), which applies if the victim was abducted. The court subtracted three levels for acceptance of responsibility as provided in the plea agreement. The total offense level was 36 and Mr. Monroe (criminal history category III) was sentenced to 240 months, with a supervised release range of three years. Mr. Monroe was also ordered to pay restitution in the amount of $24,390.60.

On appeal, Mr. Monroe contends that the sentencing court erred when it (1) applied USSG § 2A3.1 rather than § 2A4.1; (2) applied USSG § 2A4.1(b)(7) and § 2A3.1, because the court disregarded Congress's intent when it amended 18

U.S.C. § 1201(g), the kidnapping statute; and (3) found that Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), was inapplicable to the sentencing procedure.

## II. ANALYSIS

"We review the district court's interpretation and application of the sentencing guidelines de novo." United States v. Pappert, 112 F.3d 1073, 1078 (10th Cir. 1997). We review the district court's factual findings for clear error. See id.; see also 18 U.S.C. § 3742(e). "We will accept these factual findings unless the record does not support them or, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made." Id. at 1078 (internal quotation marks omitted). We view the evidence underlying a district court's sentence and the inferences drawn therefrom in the light most favorable to the district court's determination. See United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997).

## A. Application of Sexual Abuse Offense Guideline

Mr. Monroe first contends that the district court erred in applying the criminal sexual abuse offense guideline, USSG § 2A3.1, rather than the guideline for kidnapping, USSG § 2A4.1. According to Mr. Monroe, the court erred

because it used the relevant conduct guideline, USSG §1B1.3, to attribute the conduct of Mr. Albert to him. Such attribution was improper, he contends, because Mr. Albert's conduct in sexually assaulting and stabbing the victim was neither reasonably foreseeable nor in furtherance of the jointly undertaken criminal activity of kidnapping. See United States v. Ruiz-Castro, 92 F.3d 1519, 1536-37 & n. 18 (10th Cir. 1996) (discussing interaction of relevant conduct, reasonable foreseeability, and jointly undertaken activity).

We disagree. The district court was permitted to consider uncharged conduct in determining sentencing accountability, see United States v. Lewis, 115 F.3d 1531, 1537 (11th Cir.1997) (noting that sentencing court "did not err in applying the preponderance of the evidence standard to determine if the defendant had sexually abused" the victim for purposes of sentencing); see also USSG § 1B1.3 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability."), and it properly determined by a preponderance of the evidence that the sexual assault of the victim was reasonably foreseeable and jointly undertaken. See Lewis, 115 F.3d 1536-37; see also United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir.1993) (noting that "[s]entencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence"). At some point during the kidnapping, Mr. Monroe joined Mr. Albert

in deciding that this was also an opportunity to sexually abuse the victim. Following Mr. Albert's sexual assault of the victim, Mr. Monroe exploited the victim for his own sexual gratification.

In a closely related argument, Mr. Monroe maintains that the sentencing court's utilization of the cross-reference and application of USSG § 2A3.1 was in error because there "was no federal jurisdiction which would allow [its] use." Aplt's Br. at 21. Because § 2A3.1(b)(1)'s specific offense characteristics require that the "offense was committed by the means set forth in 18 U.S.C. § 2441(a) or (b)," and because Mr. Monroe was not charged or convicted of a violation of § 2441, he maintains that the four-level increase is inapplicable to him. USSG § 2A3.1(b)(1).

The government acknowledges that Mr. Monroe was not charged with a violation of § 2441 because it could not establish territorial jurisdiction for the offense of aggravated sexual abuse. However, the government argues, independent federal jurisdiction is not required for the cross-reference to apply and for the court to consider criminal sexual abuse as relevant conduct.

As noted above, the district court considered the evidence that Mr. Monroe sexually abused the victim under the preponderance-of-the-evidence standard, which is the appropriate standard to adjudge relevant conduct. See Lewis, 115 F.3d at 1536-37 ( applying a preponderance of the evidence standard to evidence

of sexual abuse).  Once a jurisdictional basis existed over the kidnapping, the district court could properly consider all relevant conduct in calculating Mr. Monroe's sentence.  See United States v. Pollard, 986 F.2d 44, 47 (3d Cir. 1993) (stating that a federal district court may "consider uncharged, relevant state conduct as well as federal. . . .  [W]hile it was important to the district court's consideration [of his sentence] that [the defendant] committed [a state law crime], it makes no difference that the same court lacked jurisdiction to try him for it"); Cree 166 F.3d at 1272 (considering state and local offenses as relevant conduct). The court's conclusion that Mr. Monroe sexually abused the victim was not in error as the prosecution presented ample evidence to satisfy that burden.  See also United States v. Jackson, 978 F.2d 903, 913 (5th Cir. 1993) (defendant convicted of kidnapping and sentenced under guideline for murder); United States v. DePew, 932 F.2d 324 (4th Cir. 1991) (same); cf. United States v. Cree, 166 F.3d 1270, 1272 (8th Cir. 1999) (noting that "the Guidelines specifically direct the sentencing court to consider state and local offenses when applying § 2A4.1(b)(7)," also applying § 2A3.1) (citing USSG § 2A4.1, cmt. (backg'd.)).

### B. 1990 Amendments

Mr. Monroe also challenges the application of USSG § 2A4.1(b)(7).  More specifically, Mr. Monroe focuses on the 1990 amendments to 18 U.S.C. §

1201(g), which established a "[s]pecial rule for certain offenses involving children."  In pertinent part, the new provision stated:

> (2)  Guidelines.--The United States Sentencing Commission is directed to amend the existing guidelines for the offense of "kidnapping, abduction, or unlawful restraint," by including the following additional specific offense characteristics:  If the victim was intentionally maltreated (i.e., denied either food or medical care) to a

life-threatening degree, increase by 4 levels;      *if the victim was sexually exploited (i.e., abused, used involuntarily for pornographic purposes) increase by 3 levels;* if the victim was placed in the care or custody of another person who does not have a legal right to such care or custody of the child either in exchange for money or other consideration, increase by 3 levels;  if the defendant allowed the child to be subjected to any of the conduct specified in this section by another person, then increase by 2 levels.

Pub. L. No. 101-647, 104 Stat. 4789 (1990) (codified at 18 U.S.C. § 1201(g)(2)) (emphasis supplied).

The Sentencing Commission responded through the implementation of the current USSG § 2A4.1(b)(7).     See U.S. Sentencing Guidelines Manual app. C, amend. 363 (1997) (explaining this and other guideline and commentary changes in response to 1990 statute; also noting "this amendment replaces the [former] subsection (b)(5) with a revised subsection (b)(7) that addressed other offenses connected with kidnapping, abduction, or unlawful restraint      *in a manner that more appropriately reflects the combined seriousness of such offenses"*      ) (emphasis supplied).  The revised subsection 2A4.1(b)(7) instructs that, if the defendant committed another offense during the kidnapping, the offense level

should be determined from the "offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction, or otherwise takes such conduct into account," USSG 2A4.1(b)(7)(A), that is, if the resulting offense guideline provides for a greater base offense level than the kidnapping offense guideline. See id. § 2A4.1(b)(7). The "criminal sexual abuse" offense guideline includes an adjustment for abduction and provides a base offense level of 27. See USSG § 2A3.1(a), 2A3.1(b)(5).

Mr. Monroe's argument suggests that because § 1201(g)(2) deals with offenses involving children, Congress set a sentence enhancement ceiling of three levels for a kidnapping involving the sexual exploitation of a minor. If the offense involved the sexual assault of a non-minor, his theory continues, the cross-reference to USSG 2A3.1 may be permissible. The suggestion that Congress would mandate a *lower* ceiling to reflect the combined *seriousness* of offenses involving children is absurd. See Johnson v. United States, 120 S. Ct. 1795, 1804 n.9 (2000) ("Nothing is better settled, than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.") (internal quotations omitted).

Because the elements of USSG § 2A4.1(b)(7) are met in this case, the district court properly used that section to reference the criminal sexual abuse guideline and the enhancement was proper.

## C. **Apprendi**

Finally, Mr. Monroe claims that the use of the cross reference and application of USSG § 2A3.1 would be unconstitutional under the rationale of the majority opinion in Apprendi, 120 S. Ct. at 2348, because there was no charge of any violation of 18 U.S.C. § 2241, § 2242, or § 2244, and no such charge could be made because there is no factual basis for the jurisdictional element of those offenses. The maximum sentence for a violation of § 1201 is life imprisonment, and the use of the criminal sexual abuse guideline does not increase that maximum. See 18 U.S.C. § 1201(a). This court has held that "Apprendi does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum." United States v. Sullivan, 242 F.3d 1248, 1256 (10th Cir. 2001). Thus, it is clear that Mr. Monroe is not entitled to relief under Apprendi.

## III. CONCLUSION

The district court properly considered the sexual abuse of the victim in sentencing Mr. Monroe.  Furthermore, the court correctly applied the kidnapping guideline and properly enhanced that section's offense level by reference to the guideline for criminal sexual abuse.  Consequently, the conviction and sentence of Mr. Monroe are AFFIRMED.