**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnny BLAZE, Defendant–Appellant.**

**No. 01–1370.**

United States Court of Appeals,
Tenth Circuit.

July 24, 2002.

review would, in fact, be appropriate.

Before EBEL, HOLLOWAY, and MURPHY, Circuit Judges.

## ORDER AND JUDGMENT*

EBEL, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Johnny Blaze, appearing pro se, seeks a certificate of appealability (COA) so that he might challenge the district court's determination that he does not qualify for habeas relief under 28 U.S.C. § 2255. Mr. Blaze was sentenced to 240 months in prison for his conviction, following a jury trial, of various counts related to an extortion scheme. The facts underlying Mr. Blaze's conviction are set forth in our decision in his direct appeal, *United States v. Blaze*, 143 F.3d 585, 586–90 (10th Cir. 1998).

We grant COA only if an appellant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Where the district court has denied a petition on the merits, we grant COA only if reasonable jurists could debate that the district court erred in its assessment of the constitutional claims. *See Slack*, 529 U.S. at 484.

Mr. Blaze makes three arguments supporting his claim for § 2255 relief, all based on the alleged ineffectiveness of his trial counsel.[1] Mr. Blaze must show sub-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. Mr. Blaze refers to an argument based on the United States Supreme Court's decision in

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), only in passing. The district court properly concluded that *Apprendi* could not apply under any circumstances because Mr. Blaze's sentence did not exceed the statutory maximum. *See United States v. Monroe*, 259 F.3d 1220, 1226 (10th Cir.2001) (*Apprendi* applies only where statutory maximum is exceeded).

standard performance resulting in prejudice to succeed on an ineffective assistance claim. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ First, he argues that his trial counsel was ineffective in seeking the dismissal of a weapons possession count. Mr. Blaze argues that, had he been sentenced for the dismissed count under 18 U.S.C. § 924(c),[2] he would have had only sixty months added to his sentence, resulting in a total sentence of 181 months. Instead, he argues, when his sentence was enhanced for weapons possession under the United States Sentencing Guidelines, he received 240 months. Mr. Blaze points to no reason why the Guidelines enhancement would not have applied had the § 924(c) count remained in the case. If the § 924(c) count had not been dropped, he could have received an additional consecutive, five-year sentence on top of the Guideline enhancement. There is no indication that Mr. Blaze's attorney's decision to seek dismissal of the § 924(c) count was substandard performance resulting in prejudice.

■ Second, Mr. Blaze contends his counsel was ineffective in stipulating to the fact that Mr. Blaze at all relevant times possessed the cellular telephone from which the extortionate phone calls were made. The district court concluded that no prejudice resulted from this stipulation in light of the fact that multiple witnesses identified Mr. Blaze's voice from tape recordings of the relevant phone calls. This conclusion is supported by the record and Mr. Blaze offers no argument refuting this logic.

Finally, Mr. Blaze argues that the district court erred in refusing to hold an evidentiary hearing on the issue of whether his cellular telephone was a "cloned" phone.[3] Mr. Blaze relies on the language of 28 U.S.C. § 2255 providing for such a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

The underlying argument here is that Mr. Blaze's attorney was ineffective in withdrawing a motion to suppress certain evidence because it was allegedly obtained through use of an illegal wiretap. The district court concluded that the motion was properly withdrawn because there was no evidence of an illegal wiretap, and further noted that 18 U.S.C. § 2511(2)(h)(ii) permits law enforcement officials to monitor calls from an illegally "cloned" cell phone, the type of phone possessed by Mr. Blaze.

In response to this reasoning, Mr. Blaze points to the declaration of a purported expert in cellular telephone technology, offered in connection with Mr. Blaze's habeas petition. This declarant asserts that law enforcement officials could not have known that Mr. Blaze's phone was "cloned" until they had it in their possession to examine its circuitry; thus, the monitoring was illegal.

---

**2.** This section sets forth sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C.

§ 924(c)(1)(A). It further provides that the sentences shall be imposed "in addition to the punishment provided for such crime of violence or drug trafficking crime." *Id.*

**3.** A "cloned" phone is created when a cell phone is modified to place charges on an existing account belonging to another individual or company.

Agents investigating the case obtained a court order permitting them to use trap and trace, pen register, and mobile tracking technology to monitor Mr. Blaze's cell phone use. The order, however, did not permit authorities to monitor Mr. Blaze's phone conversations themselves, though the technology used was capable of such surveillance. The primary allegation in the motion to suppress was that, in the absence of another plausible explanation, authorities must have been listening to the content of Mr. Blaze's phone calls because they were waiting to arrest him at precisely the moment that Mr. Blaze returned two rented mopeds from a rental agency in Honolulu, Hawaii. The motion presented no affirmative evidence of an illegal wiretap; rather, it drew the inference of an illegal wire tap from the circumstances of Mr. Blaze's arrest, and challenged the government to provide an explanation for those circumstances. At the suppression hearing, an agent on the case explained how surveillance techniques unrelated to Mr. Blaze's use of his cell phone were used to anticipate his arrival at the rental agency, thus facilitating his arrest.[4] In light of this explanation of the circumstances leading to Mr. Blaze's arrest, his attorney withdrew the motion to suppress.

Even if Mr. Blaze's declaration were sufficient to create a factual issue regarding whether the phone was "cloned,"[5] this would not have an impact on the question of whether it was reasonable for his attorney to withdraw the motion to suppress given the circumstances at the time. *See Romano v. Gibson,* 278 F.3d 1145, 1151 (10th Cir.2002) (counsel's conduct should be evaluated from counsel's perspective at the time of the conduct). The question of whether the phone was cloned was not a subject of the motion to suppress and would not have had an impact on counsel's decision to withdraw the motion.

We do not find it reasonably debatable that the district court erred in its assessment of the constitutional claims. *See Slack,* 529 U.S. at 484. Accordingly, Mr. Blaze's application for COA is DENIED and the appeal is DISMISSED. Upon consideration, Mr. Blaze's application to proceed in forma pauperis is GRANTED.

---

4. The agents knew Mr. Blaze was in Hawaii because they had traced his calls from the phones of the victims of the extortion scheme. They determined that Mr. Blaze was likely to rent a high-end vehicle while in Hawaii, and contacted a number of high-end rental agencies to determine if he had conducted business with them. This led them to the agency that rented Mr. Blaze the two mopeds, which Mr. Blaze was expected to return on a particular date at a particular time. Agents waited at the rental agency for Mr. Blaze and arrested him when he arrived.

5. We do not believe the declaration is sufficient to create a fact issue meriting further investigation. The affidavit supporting the trap and trace order for Mr. Blaze's phone asserted that authorities were able to determine that the phone was "cloned" from the phone number of Mr. Blaze's cell phone (obtained through a trace from the victim's phone line) and telephone records. The fact that Mr. Blaze's declarant, who last worked in the cell phone industry in 1993, did not know of any technology allowing authorities to determine that a phone was "cloned" without examining the phone's circuitry does not directly and affirmatively eliminate the possibility that this determination could be made another way.