**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHNNY BLAZE,

Defendant-Appellant.

No. 01-1370
(D.C. No. 99-S-1388)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Defendant-appellant Johnny Blaze appeals the district court's decision

denying him 28 U.S.C. § 2255 relief . In a previous order and judgment, this court

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

denied Blaze a certificate of appealability (COA) on three ineffective-assistance claims challenging his federal racketeering and extortion convictions and sentences. *See* Order & Judgment, No. 01-1370, 2002 WL 1644800 (10th Cir. July 24, 2002). We subsequently vacated that decision, however, and granted Blaze's petition for rehearing, as well as COA, on his claim alleging that his trial attorney was constitutionally ineffective for persuading the district court to dismiss an 18 U.S.C. § 924(c) count charging Blaze with using a gun to commit a crime of violence. In granting Blaze rehearing on this claim, we were concerned that the counterintuitive situation may have occurred in which defense counsel's success in getting the § 924(c) charge dismissed actually resulted in a lengthier sentence because it permitted the district court then to enhance Blaze's offense level by six, under the applicable sentencing guidelines' weapons enhancement, USSG § 2B3.2(b)(3)(A)(ii).[1] Blaze would not have been subject to this weapons enhancement had the jury convicted him under 18 U.S.C. § 924(c). *See* USSG § 2K2.4(a) & nn. 1, 2.

---

[1] The sentencing guidelines in effect at the time the district court sentenced Blaze, in February 1997, will apply, absent any *ex post facto* problem. *See United States v. Owens*, 70 F.3d 1118, 1130 (10th Cir. 1995) (citing, *e.g.*, 18 U.S.C. § 3553(a)(4), and USSG § 1B1.11(a)). Because Blaze asserts that the sentencing guidelines effective November 1, 1995, applied at the time he was sentenced, *see* Aplt. Reh'g Br. at 10 n.2, we refer to those 1995 guidelines, unless we indicate otherwise.

When we granted rehearing, this court also appointed Steven Sklaver as counsel to represent Blaze, who had previously been pursuing his § 2255 motion pro se. Appointed counsel now, candidly and through good workmanship, concedes that Blaze's sentence would have been longer with the guidelines' weapons enhancement, rather than under 18 U.S.C. § 924(c), only if trial counsel could also have eliminated sentencing enhancements both for making a threat of death or bodily harm, USSG § 2B3.2(b)(1), and for involving a vulnerable victim, *id.*, § 3A1.1(b). *See, e.g.,* Aplt. Reh'g Br. at 20-21; Aplt. Reh'g Reply Br. at 11-12. We agree with defense counsel's calculations.

The jury convicted Blaze of racketeering and conspiring to, and interfering with, interstate commerce by threats of violence by extortion and robbery, *see* 18 U.S.C. §§ 2, 1951(a), 1952(a)(2), and making threatening interstate telephone calls with the intent to extort, *see id.*, § 875(b). In calculating Blaze's sentence, the district court grouped his convictions into five separate categories, combining the racketeering and interference-with-commerce convictions into one category, and the seventeen threatening-telephone-call convictions into four other groups, based upon the dates Blaze made those calls. *See generally* USSG §§ 3D1.1, 3D1.2 (setting forth rules for grouping multiple convictions). Neither party challenges the district court's grouping, nor the fact that the offense level for the telephone-count groups was twenty-six. Because the racketeering group

had a much greater offense level than the telephone-count groups, those threatening-telephone-call convictions essentially dropped out of the sentencing calculation, and the district court based Blaze's sentence instead solely on the racketeering and interference-with-commerce convictions. *See id.*, § 3D1.4(c).

Those racketeering and extortion convictions started with a base offense level of eighteen. *See id.*, § 2B3.2(a). The district court then further enhanced that base offense level by two because Blaze made an express or implied threat of death or bodily harm, *see id.*, § 2B3.2(b)(1); two levels because the offenses involved between $50,000 and $250,000, *see id.*, § 2B3.2(b)(2) (referencing *id.*, § 2B3.1(b)(6)); six levels for using a firearm, *see id.*, § 2B3.2(b)(3)(A)(ii); four levels because Blaze abducted an individual during the course of these criminal events, *see id.*, § 2B3.2(b)(5)(A); two levels because these offenses involved a vulnerable victim, nine-year-old Vincent Scotti, *see id.*, § 3A1.1(b); and four more levels because Blaze was a leader and organizer of this criminal conduct, *see id.*, § 3B1.1. Blaze's resulting total offense level, then, was thirty-eight. Combined with his criminal history category of I, the resulting sentencing range was 235 to 293 months, *see* USSG Ch. 5, Pt. A, which easily accommodated the district court's sentencing Blaze to the statutory maximum 240 months' imprisonment, *see* 18 U.S.C. § 1952(a)(3)(B).

Had the jury convicted Blaze under 18 U.S.C. § 924(c) for using a firearm to commit a crime of violence, the sentencing court could not have enhanced Blaze's racketeering and extortion offense level by six for using a firearm. *See* USSG § 2K2.4(a) & nn. 1, 2. That would have left his offense level for the first group of offenses at thirty-two. However, this would also have reduced the discrepancy between the offense level for this first group of racketeering offenses and the offense levels for the other four groups involving the threatening telephone calls. Therefore, the four threatening-telephone-call groups would have reentered the sentencing calculation, adding three more levels to Blaze's total offense level. *See id.* § 3D1.4. Blaze's total offense level, then, with an 18 U.S.C. § 924(c) conviction, would have been thirty-five, resulting in a sentencing range of 168-210 months. *See* USSG Ch. 5, Pt. A. In addition, however, the 18 U.S.C. § 924(c) conviction would have required an additional five-year, or sixty-month,[2] consecutive sentence tacked on to that guideline range. *See* USSG § 2K2.4(a). The actual sentencing range, therefore, with the 18 U.S.C. § 924(c) conviction, would have been 228-270 months, *see* USSG Ch. 5, Pt. A,

---

[2] The government, before the district court, and the district court calculated Blaze's 18 U.S.C. § 924(c) sentence to be 120 months. The parties now agree, however, and we concur, that Blaze would have faced only a sixty-month consecutive sentence had the jury convicted him under § 924(c).

which again would have permitted the district court to impose the statutory maximum 240-month sentence.

If defense counsel had been able to eliminate either the vulnerable-victim or the threat enhancement, the first group's offense level would have been only thirty. But the grouping rules would have required four additional levels for the telephone convictions, *see* USSG § 3D1.4, raising Blaze's total offense level to thirty-four. The sentencing range, then, would have been between 151 and 188 months. *See id.*, Ch. 5, Pt. A. But to that, the district court, again, would have had to tack on the consecutive sixty-month 18 U.S.C. § 924(c) sentence, resulting in a total sentencing range of 211 to 248 months. That range, then, still would have accommodated the statutory maximum 240-month sentence the district court did impose.

It is only if defense counsel could have eliminated both the vulnerable-victim and threat enhancements, thus reducing Blaze's first group's offense level by four, that the sentencing range, after considering the relevant grouping rules, would have reduced Blaze's total offense level to such an extent that, even tacking on the sixty-month 18 U.S.C. § 924(c) sentence, the sentencing range would not have permitted the district court to impose the statutory

maximum 240 months' imprisonment.[3]  And defense counsel concedes that it is

only at this point that trial counsel's persuading the trial court to dismiss the

§ 924(c) charge would have produced a lengthier sentence than had the jury

convicted him under § 924(c).  Counsel, therefore, now also challenges the

sentencing court's application of both the vulnerable-victim and the threat

enhancements, though he does not make those arguments in terms of ineffective

assistance of counsel.[4]

---

[3]     In sentencing Blaze, the district court decided to impose "the statutory maximum penalty" because "[t]hat would give effect to the congressional intent with regard to this matter and give effect to the seriousness of the offense." Sentencing Hr'g Tr. at 80.  Defense counsel's concession, therefore, that Blaze cannot prevail unless his trial counsel could have lowered his sentencing range below that which would have supported a statutory maximum twenty-year sentence, is appropriate.  *Cf. United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003) (granting § 2255 relief and remanding for resentencing, where defense counsel's error resulted in district court sentencing defendant under improperly elevated sentencing range; although proper sentencing range would also have included length of sentence district court had originally imposed, this court noted that sentencing court had originally chosen to sentence defendant at lower end of guidelines, and might again choose to do so under proper sentencing range).  By contrast, as noted above, here the district court expressed an intent to sentence at the statutory maximum if supported by the Guidelines.

[4]     Although we specifically granted Blaze COA only on his claim that trial counsel was ineffective in requesting the district court dismiss the 18 U.S.C. § 924(c) count, we will also address Blaze's additional arguments challenging the vulnerable-victim and threat enhancements.  Because these arguments are inextricably linked to the weapons enhancement at issue in the ineffective-assistance claim for which we already granted COA, we deem that grant to be broad enough also to encompass these additional arguments.

We address first, then, Blaze's contention that the sentencing court erred in applying the two-level vulnerable-victim enhancement, USSG § 3A1.1(b), to calculate his sentence. The government, in its response brief, asserts Blaze has procedurally defaulted this claim. We agree, concluding that Blaze is now procedurally barred from challenging this enhancement, for three reasons.

First, he procedurally defaulted this claim by not raising it on direct appeal. *See United States v. Frady*, 456 U.S. 152, 162, 167-68 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621, 622 (1998). And Blaze, in his reply brief, does not attempt to excuse his default by asserting cause and prejudice. [5] *See, e.g., Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). Nor could he. Cause is established by proof that some objective factor, external to the defendant and not fairly attributable to him, impeded his efforts to comply with a procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Cause may be shown, for example, by ineffective representation at trial or on appeal, or that the factual or legal basis of a habeas claim was not reasonably available earlier. *See, e.g., id.* at 753-54.

The specific issue Blaze now presents through his vulnerable-victim claim is whether the sentencing court could have deemed nine-year-old Vincent Scotti

---

[5] The fundamental-miscarriage-of-justice exception to procedural default does not apply to noncapital sentencing claims. *See United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993).

to be a vulnerable victim, for sentencing purposes, without proof that Blaze specifically targeted the child to victimize. *See, e.g.,* Aplt. Reh'g Br. at 9-14. Sentencing guidelines § 3A1.1(b) provides a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." At the time Blaze committed these crimes, [6] in August and September 1995, § 3A1.1's application note further included language suggesting "this adjustment applie[d] to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." USSG (1994) § 3A1.1 n.1. In light of this application note's targeting language, other circuit courts were, at that time, divided as to whether § 3A1.1 required the government to prove that the defendant specifically targeted a victim because of his special vulnerability, before the sentencing court could apply the vulnerable-victim enhancement. *See, e.g., United States v. Smith*,

---

[6] Although this court would ordinarily apply the guidelines in effect at the time the district court sentenced Blaze, because he asserts that to do so here would amount to an e *x post facto* violation, we consider, instead, the state of the law at the time Blaze committed these crimes. *See, e.g., Owens*, 70 F.3d at 1130. At that time, in August and September 1995, the vulnerable-victim enhancement was designated § 3A1.1, rather than § 3A1.1(b). The enhancement's language, however, remained the same under both versions, although as pointed out in the text, the commentary language changed somewhat.

39 F.3d 119, 122-23 (6th Cir. 1994) (discussing split among circuits). This court, however, had not yet expressly addressed this issue.

After Blaze had committed these offenses, but before his trial and sentencing, the Sentencing Commission, in November 1995, amended § 3A1.1's commentary "to clarify that there is no targeting requirement." *United States v. Zats*, 298 F.3d 182, 188 (3d Cir. 2002). It was soon after this amendment took effect that Blaze's trial counsel persuaded the district court, during Blaze's trial, to dismiss the 18 U.S.C. § 924(c) charge. And, just before Blaze's sentencing, in February 1997, this circuit held that it would not rely on the earlier application note's targeting language when applying the pre-amended 1994 version of USSG § 3A1.1. *See United States v. Hardesty*, 105 F.3d 558, 558-60 (10th Cir. 1997). At Blaze's sentencing, then, the district court, relying on *Hardesty*, rejected Blaze's argument that the government had to prove first that he had specifically targeted nine-year-old Vincent Scotti because of his vulnerability, before the court could apply this enhancement to calculate Blaze's sentence. We cannot say, then, Blaze's appellate counsel was constitutionally deficient, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), for not later asserting the same argument on direct appeal that this court had rejected in *Hardesty*.

Blaze further contends now, however, that *Hardesty* is actually contrary to earlier Tenth Circuit authority essentially adopting and applying the earlier

-10-

application note's pre-amendment targeting language. *See, e.g.,* Aplt. Reh'g Br. at 12-13. *Hardesty* itself, however, indicated that its holding was "in general accord" with this circuit's earlier law. 105 F.3d at 560. And two other circuits have rejected similar arguments where their earlier case law, while using targeting language, never specifically addressed whether § 3A1.1 required the government to prove the defendant specifically targeted a victim because of his or her vulnerability. *See United States v. Burgos*, 137 F.3d 841, 843-44 (5th Cir. 1998); *United States v. Gill*, 99 F.3d 484, 488 (1st Cir. 1996). In any event, while this argument was available to Blaze's counsel to raise on direct appeal, *see Bousley*, 523 U.S. at 622, we cannot say that counsel was ineffective for not raising this issue there, *see, e.g., Upchurch v. Bruce*, 333 F.3d 1158, 1164, 1166-67 (10th Cir. 2003) (28 U.S.C. § 2254); *Hickman v. Spears*, 160 F.3d 1269, 1273-75 (10th Cir. 1998) (same).

Nor can Blaze now assert, as cause excusing his procedural default, any ineffective representation in pursuing his § 2255 motion because there is no constitutional right to counsel in a § 2255 proceeding, *cf. Coleman*, 501 U.S. at 752-53 (28 U.S.C. § 2254), and, in any event, Blaze was, initially, representing himself. *See Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) (petitioner's assertion that he was not an attorney and was unaware of existence of state statute was insufficient, as a matter of law, to establish cause).

For these reasons, then, we conclude Blaze has procedurally defaulted his vulnerable-victim claim. Blaze's only response is that the government, having never before raised this affirmative procedural-bar defense, cannot now assert it for the first time in its response brief filed after we granted rehearing. *See* Aplt. Reh'g Reply Br. at 4. This court, however, can raise a procedural-bar defense *sua sponte*. *See, e.g., United States v. Barajas-Diaz*, 313 F.3d 1242, 1247 (10th Cir. 2002). Additionally, in this case, we cannot fault the government for not raising this procedural-default defense earlier because Blaze never specifically raised his vulnerable-victim claim before the district court in his § 2255 proceeding. He did assert, in his § 2255 motion, that the sentencing court should not have treated *Louis* Scotti as a vulnerable victim, because he "was only forty year[s] old at the time of the crime, he was an ex-marine trained in hand-to-hand combat, he is about 6 feet 2 inches in height[h] and weighs 220 pounds." Section 2255 Mot. at 8. The sentencing court, however, had never deemed Louis Scotti to be the vulnerable victim. Rather, the sentencing court clearly based this enhancement on nine-year-old Vincent Scotti's presence at the time Blaze invaded the Scotti home. Even liberally construing Blaze's pro se pleadings, then, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), we still cannot stretch his claim specifically arguing that Louis Scotti was not a vulnerable victim to challenge, instead, Vincent Scotti's status as a vulnerable

victim. The fact that Blaze did not adequately raise this claim before the district court, therefore, provides an additional procedural reason precluding us from reviewing the merits of his vulnerable-victim claim. *See, e.g., Hill v. Kan. Gas Serv. Co.*, 323 F.3d 858, 865-66 (10th Cir. 2003).

Further, to permit Blaze to raise this new claim at this point in his § 2255 proceedings would also improperly allow him to circumvent § 2255's one-year limitations period. *See* 28 U.S.C. § 2255; *cf. United States v. Espinoza-Saenz*, 235 F.3d 501, 504-05 (10th Cir. 2000) (holding § 2255 movant could not assert new claims in motion to amend § 2255 motion filed after AEDPA's one-year time limit had expired).

These three procedural reasons, therefore, preclude us from considering the merits of Blaze's vulnerable-victim claim. And, because Blaze concedes that, to obtain § 2255 relief, he must eliminate both the vulnerable-victim and threat enhancements, his ineffective-assistance claim fails. Therefore, we need not address whether the district court should have applied the threat enhancement in calculating Blaze's sentence. Were we to address that claim, however, we would note that there are similar grounds for deeming Blaze to have procedurally defaulted that claim as well.

Blaze, again, never asserted this specific argument in his § 2255 pleadings to the district court.[7] *See, e.g., Hill*, 323 F.3d at 865-66; *see also* 28 U.S.C. § 2255. Nor did he challenge this threat enhancement on direct appeal. *See Frady*, 456 U.S. at 162, 167-68; *see also Bousley*, 523 U.S. at 621, 622. And, again, it does not appear that Blaze can assert cause and prejudice excusing this default.[8] Although this claim was available, we could not conclude that Blaze's appellate counsel was constitutionally ineffective for failing to raise this claim on direct appeal because the correct application of this enhancement was sufficiently in doubt at the time of Blaze's sentencing and direct appeal. At the time the district court sentenced Blaze in this case, three other circuits had held that, to avoid double counting, USSG § 2K2.4 precluded enhancing an offense level for making an express threat of death or bodily harm, when a jury had also convicted the defendant of using a firearm to commit a crime of violence, under 18 U.S.C. § 924(c). These courts, however, reached this conclusion in a robbery, not an extortion, context. *See United States v. Triplett*, 104 F.3d 1074, 1081 (8th Cir. 1997) (considering § 2B3.1(b)(2)(F)'s enhancement for making express

---

[7]    Blaze did unsuccessfully assert a separate claim alleging that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required a jury, instead of the district court, to find the existence of all relevant sentencing enhancements.

[8]    If this apparent procedural default did provide the basis for this court's denying Blaze relief, then this court would have had first to provide Blaze an opportunity to address that issue before *sua sponte* denying § 2255 relief on this basis. *See, e.g., Barajas-Diaz*, 313 F.3d at 1247 n.7.

threat of death during robbery); *see also United States v. Duran*, 4 F.3d 800, 804

(9th Cir. 1993); *United States v. Smith*, 981 F.2d 887, 893-94 (6th Cir. 1992).

These cases, then, involved enhancing offense levels for discrete incidents

involving using a firearm to make a threat during an armed robbery, rather than as

part of an ongoing extortion scheme like the one at issue here. And it appears

that no circuit court has yet extended this reasoning to preclude a threat

enhancement under circumstances similar to this case. *But cf. United States v.*

*Corrado*, 304 F.3d 593, 597-98, 614-15 (6th Cir. 2002) (enhancing defendant's

offense level for racketeering and extortion convictions, because defendant made

threat to further extortion, where jury had also convicted defendant of using

firearm under § 924(c), but without addressing whether this might amount to

impermissible double counting), *cert. denied*, 123 S. Ct. 1366 (2003). And this

court has not yet specifically addressed whether a § 924(c) conviction would

preclude enhancing either a robbery or an extortion sentence based upon a threat

of death or bodily harm. In light of that, while the claim Blaze makes now was

not so novel as to have been unavailable to Blaze's appellate attorney, *see, e.g.,*

*Bousley*, 523 U.S. at 622, we cannot say the attorney was constitutionally

ineffective for having failed to challenge the district court's applying this threat

enhancement in Blaze's case, *see, e.g., Upchurch* , 333 F.3d at 1164, 1166-67;

*Hickman* , 160 F.3d at 1273-75. It does not appear, therefore, that Blaze would

have been able to establish cause and prejudice excusing his procedural default of this threat-enhancement claim.

In any event, Blaze has procedurally defaulted his challenge to the vulnerable-victim enhancement. And Blaze concedes he cannot establish that he would have received a shorter prison sentence if the jury had convicted him under 18 U.S.C. § 924(c) unless he can eliminate both the vulnerable-victim and threat enhancements. Blaze, therefore, cannot show that he was prejudiced by his trial attorney's successfully moving the trial court to dismiss that § 924(c) count. His ineffective-assistance claim challenging that dismissal, therefore, fails. *See Strickland*, 466 U.S. at 687. In light of that, we AFFIRM the district court's decision denying § 2255 relief on that claim, though for different reasons than those upon which the district court relied.

Although, when we granted rehearing, we vacated our previous order and judgment denying Blaze COA on two other ineffective-assistance claims, we did not grant Blaze COA on those two additional issues. Nor did we request that the parties brief those other claims, alleging that Blaze's trial counsel was ineffective for mistakenly stipulating that Blaze possessed the cell phone used to make the threatening telephone calls and for withdrawing a motion to suppress alleging government officials unlawfully tapped calls Blaze made on that cell phone. We, therefore, simply reiterate here that COA is denied on those two claims,

-16-

for the same reasons stated in this court's original order and judgment, dated July 24, 2002.

Entered for the Court


David M. Ebel
Circuit Judge