UNITED STATES of America, Plaintiff–Appellee,

v.

Julio Antonio DURAN, Defendant–Appellant. (Two Cases)

Nos. 91–30336, 92–30177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided Sept. 9, 1993.

---

Hugh M. Spall, Ellensburg, WA, for defendant-appellant.

Joseph H. Harrington, Asst. U.S. Atty., Spokane, WA, for plaintiff-appellee.

Before: CANBY, WIGGINS, and T.G. NELSON, Circuit Judges.

**OPINION**

WIGGINS, Circuit Judge:

Julio Antonio Duran was charged with committing three separate armed bank robberies, in violation of 18 U.S.C. §§ 2113(a) and (d), and three counts of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The use of a firearm counts were brought in connection with the armed bank robbery counts. In addition, Duran was charged with one count of possession of a sawed-off shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871. At the end of the government's case-in-chief, the district court granted Duran's motion for judgment of acquittal as to one of the bank robbery counts and the connected use of a firearm count. Duran was convicted on two counts of bank robbery, two counts of using a firearm, and of possession of a sawed-off shotgun. After a subsequent 28 U.S.C. § 2255 hearing, Duran's bank robbery and use of a firearm convictions were vacated. The sawed-off shotgun conviction remained intact.

On retrial, Duran was reconvicted of only one of the remaining bank robbery counts and one of the remaining use of a firearm counts. He was sentenced to a 125-month term for the bank robbery and an additional 60-month consecutive term for the firearm count. He is also serving a 120-month concurrent sentence for the sawed-off shotgun conviction. He appeals. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294. We affirm Duran's bank robbery, use of a firearm, and possession of a sawed-off shotgun convictions, but remand his bank robbery and possession of a sawed-off shotgun sentences for resentencing.

**DISCUSSION**

I.  *The Bank Tellers' Voice Identifications of Duran*

Duran contends that the tellers' identifications of his voice should not have been admitted because (1) a proper foundation had not been laid and (2) the identifications were unreliable and unduly suggestive. We review questions of the admissibility of

evidence that involve factual determinations for an abuse of discretion. *See United States v. Wood,* 943 F.2d 1048, 1055 n. 9 (9th Cir. 1991). We also review questions involving in-court identification testimony for an abuse of discretion. *See United States v. Carbajal,* 956 F.2d 924, 929 (9th Cir.1992); *United States v. Gregory,* 891 F.2d 732, 734 (9th Cir.1989). We reject both of Duran's arguments.

■ First, Duran strains to find a basis for his foundation objection. Federal Rule of Evidence 901(a) permits identification where the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." For voice identifications, Rule 901(b)(5) requires only the "hearing [of] the voice at any time under circumstances connecting it with the alleged speaker." Rule 901 was satisfied in this case. The government established that Duran had both tellers' undivided attention during the robbery while Duran shouted many commands, demanded money, and threatened the occupants of the bank. Both tellers also had the opportunity during Duran's first trial to hear Duran speak. Both tellers testified, based on their observations of Duran's unusual voice and accent, that his was the voice of the robber. Accordingly, we conclude that the district court did not abuse its discretion because a sufficient foundation supported the admission of the tellers' voice identifications of Duran.

■ Second, the district court did not err in admitting the tellers' in-court voice identifications of Duran. Preliminarily, Duran characterizes the initial in-court voice identification as an unduly suggestive pretrial identification for purposes of the second trial. However, we conclude that the tellers' identifications of Duran's voice occurred in-court, not pretrial, because the identifications were subject to contemporaneous cross-examination. The fact that Duran received a new trial does not turn these in-court identifications into pretrial identifications.

As in-court identifications, we must consider the following factors in determining whether the tellers' voice identifications of Duran were reliable:

"the opportunity of the witness to [hear] the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal['s voice], the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Carbajal,* 956 F.2d at 929 (quoting *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)).

Under the *Carbajal* factors, the tellers' identifications of Duran's voice are sufficiently reliable. Again, both tellers had ample opportunity to listen to Duran's voice during the robbery. Duran ordered the tellers to raise their hands and demanded money. He ordered a teller to escort him into the vault and to open it up. Inside the vault, Duran continued to holler at the teller, demanding the keys to the vault, telling her to hurry, and asking where all the money was. He ordered the teller back to the teller area and demanded the keys to the remaining cash drawers. As Duran left, he threatened everyone in the bank: "don't move or we'll kill you." Both tellers were likely very attentive during the robbery given Duran's weapon and threats, as evidenced by their accurate descriptions of Duran and his distinctive voice and the fact that neither teller equivocated in her identification of Duran's voice. Moreover, the in-court identifications occurred just three months after the bank robbery. Thus, we conclude that the in-court voice identifications were reliable. Accordingly, because the district court did not abuse its discretion in admitting the voice identifications, we affirm Duran's bank robbery and use of a firearm convictions.

## II. *Joinder of the Possession of the Sawed–Off Shotgun Charge*

■ Duran next contends that the district court erred by denying his motion for a mistrial based upon the prejudice he suffered due to the joinder of the possession of a sawed-off shotgun count with the armed bank robbery and use of a firearm counts during his first trial. "We review the denial of a motion for a mistrial for an abuse of discretion." *See United States v. Homick,*

964 F.2d 899, 906 (9th Cir.1992). We must reverse Duran's conviction on the basis of prejudice due to joinder only if he can show that manifest prejudice resulted from the joinder. *See United States v. Catabran*, 836 F.2d 453, 460 (9th Cir.1988). To establish manifest prejudice, Duran must show a violation of one of his substantive rights. *Id.* (citing *United States v. Sutton*, 794 F.2d 1415, 1427 (9th Cir.1986)).

Here, Duran has failed to show any violation of a substantive right. Moreover, this court has indicated that "[e]ven where the court actually finds misjoinder, the court will uphold a ... denial [of severance] if there is strong evidence of guilt and the judge provided careful instructions." *Id.* Here, the government introduced strong evidence establishing that Duran knowingly possessed a sawed-off shotgun.[1] In addition, the district court specifically charged the jury to consider the evidence of each count separately and told the jury that its verdict as to one offense should not influence in any way its verdict as to any other offense. Given the weight of the evidence supporting his conviction on the possession of a sawed-off shotgun count, and the district court's careful instructions to consider evidence of each count separately, we conclude that the district court did not abuse its discretion in denying the motion for a mistrial.

### III. *Duran's Bank Robbery Sentence*

Duran also contends that the district court erred by increasing his bank robbery offense level two points for an express threat of death under section 2B3.1(b)(2)(F) of the Sentencing Guidelines. We review de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Kohl*, 972 F.2d 294, 297 (9th Cir.1992). We conclude that the district court erred.

In addition to his conviction for the robbery, Duran was convicted under 18 U.S.C. § 924(c) for use of a firearm in the commission of a robbery. Sentencing for the robbery is governed by section 2B3.1 while sentencing for the use of the firearm in violation of § 924(c) is governed by section 2K2.4. Application Note 2 to section 2K2.4 states:

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (*e.g.*, § 2B3.1(b)(2)(A)–(F) (Robbery)), is not to be applied in respect to the guideline for the underlying offense.

Because the adjustment for an express threat of death is contained in section 2B3.1(b)(2)(F), the commentary to section 2K2.4 seems expressly to preclude any adjustment for an express threat of death during the robbery. The Sixth Circuit so held in *United States v. Smith*, 981 F.2d 887 (6th Cir.1992):

> [I]t is clear that the Sentencing Commission viewed an expressed threat of death as the equivalent of possession, use, or discharge of a firearm in the course of a robbery, and intended that the enhancement under § 2B3.1(b)(2)[F] for an express threat of death should not be applied where the defendant is convicted of the violation of 18 U.S.C. § 924(c).

*Id.* at 893.

We adopt the *Smith* court's analysis. Here, the district court applied the two point adjustment for an express threat of death despite the fact that Duran was convicted of violating § 924(c). *Smith* and Application Note 2 to section 2K2.4 indicate that this was error. Thus, we vacate Duran's bank robbery sentence and remand for resentencing.

### IV. *Duran's Possession Of A Sawed–Off Shotgun Sentence*

The district court sentenced Duran to 120 months for his possession of a sawed-

---

1. The following evidence was introduced at trial: an officer stopped Duran's car while Duran was driving; an officer searched Duran's car and found a zippered nylon bag, containing a sawed-off shotgun, hidden behind the backseat cushion; during the search, Duran was in a police patrol car approximately 25 feet from his car; when the officer placed the zippered nylon bag in the front seat of the patrol car, Duran began protesting that the shotgun was not his and that he had been framed; and Duran's objections came before any officer mentioned that the bag contained a sawed-off shotgun.

off shotgun conviction. However, the appropriate sentencing range was 51–63 months. The district court made no findings justifying this departure. The government concedes that this was error, and we agree. Accordingly, we remand Duran's possession of a sawed-off shotgun sentence for resentencing and instruct the district court to make the necessary findings if it intends to depart upward.

Duran's bank robbery, use of a firearm, and possession of a sawed-off shotgun convictions are AFFIRMED. His bank robbery and possession of a sawed-off shotgun sentences are VACATED and REMANDED for resentencing.