64 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Duane AGTUCA, Defendant-Appellant.
 No. 94-30257.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 25, 1995.
Decided Aug. 11, 1995.
 
 Before: WRIGHT, BEEZER and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Kenneth Agtuca appeals his convictions for conspiracy to commit armed bank robbery, in violation of 18 U.S.C. Sec. 371, armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a), (d), use of a firearm, in violation of 18 U.S.C. Sec. 924(c)(1), and possession of a firearm by a felon, in violation of 18 U.S.C. Sec. 922(g)(1). We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 
 3
 Agtuca first argues that the district court erred in denying his motion to suppress evidence seized from him upon his arrest. He claims that the officers did not have probable cause to arrest him. The government responds that there was reasonable suspicion for an investigatory stop, which ripened into probable cause for arrest. Whether officers have reasonable suspicion or probable cause is a mixed question of law and fact, which we review de novo. United States v. Valencia, 24 F.3d 1106, 1108 (9th Cir.1994) (probable cause for arrest); United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989) (reasonable suspicion for investigatory stop).
 
 
 4
 We conclude that there was reasonable suspicion to justify an investigatory stop of Agtuca, which ripened into probable cause for arrest. See United States v. Medina-Gasca, 739 F.2d 1451, 1453 (9th Cir.1984) ("Founded suspicion to stop for investigatory detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop."). Reasonable suspicion exists if the officer is aware of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the person is, or is about to be engaged in criminal activity. United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir.1994); United States v. Alvarez, 899 F.2d 833, 836 (9th Cir.1990), cert denied, 498 U.S. 1024 (1991). The stop is evaluated by examining the totality of circumstances and determining whether the detaining officers had a particularized, objective basis for suspecting the person they detained of criminal activity. Alvarez, 899 F.2d at 836.
 
 
 5
 Before stopping Agtuca, it was known that (1) Diane Foust and a man named "Ken" were suspects in a Seattle bank robbery, the robber used a gun, and the stolen money was marked with red dye;[1] (2) Foust, who was staying at the Aspen Motel, and a male companion, purchased a Pontiac Fiero with red-stained cash; (3) Foust and two men were seen loading the Fiero at the Aspen Motel, and at least one of the men matched the description given by Seattle authorities and the car dealership employee; (4) Foust's companions were seen leaving the motel walking westward. The arresting officers were given the descriptions of the two men, and told that they were possibly connected with a bank robbery and possibly armed. The officers spotted two men meeting the descriptions a few blocks from the motel. The men separated when they spotted the marked police car. Agtuca appeared to be waiting to see what the patrol car was going to do, and the other man ducked into a nearby store. Under these circumstances, the officers had a particularized and objective basis for making the investigatory stop of Agtuca. See, e.g., United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.) (stop valid where police had informant's general description of bank robbery suspects with red-stained money driving a red car with out-of-state plates, and motel manager reported seeing men who had been driving red car with bank diagram and list of police frequencies), cert. denied, 476 U.S. 1185 (1986).
 
 
 6
 There can be no dispute that once stopped, the police had probable cause to believe that Agtuca was involved in the bank robbery. Aware that Agtuca was possibly armed, the officers frisked him and felt the outside of his shaving kit, which could have concealed a weapon. See Terry v. Ohio, 392 U.S. 1, 23-24, 146 (1968) (police are entitled to take steps to ensure that the person is not armed). Upon feeling bulges in Agtuca's pocket and the shaving kit, the police discovered wads of red-stained cash. This undoubtedly gave the officers probable cause to arrest Agtuca. See United States v. Holzman, 871 F.2d 1496, 1503-04 (9th Cir.1989) (probable cause exists where the facts and circumstances would lead a prudent person to believe that criminal conduct is afoot), overruled on other grounds by Horton v. California, 496 U.S. 128 (1990).
 
 II.
 
 7
 Agtuca argues that the bank teller's in-court identification of his voice should not have been admitted because it was unreliable and unduly suggestive. We review questions involving in-court identification testimony for abuse of discretion. United States v. Duran, 4 F.3d 800, 803 (9th Cir.1993), cert. denied, 114 S.Ct. 894 (1994). "An abuse of discretion occurs only if the resulting in-court procedures are so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process...." United States v. Domina, 784 F.2d 1361, 1369 (9th Cir.1986), cert. denied, 479 U.S. 1638 (1987) (internal quotations omitted).
 
 
 8
 In determining the reliability of in-court identification procedures, we consider the following factors:
 
 
 9
 the opportunity of the witness to [hear] the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal['s voice], the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 10
 Duran, 4 F.3d at 803 (quoting United States v. Carbajal, 956 F.2d 924, 929 (9th Cir.1992)). Based upon these factors, we conclude that the voice identification in this case was sufficiently reliable. The teller had ample opportunity to hear the robber's voice. The robber demanded money from her and told her to "hurry up" numerous times while he was within two feet of her. We can also safely assume that the teller was attentive, given that the robber held a gun on her. She recalled that the robber's voice was very low, and, in court, she was "about 75, 80 percent certain" that Agtuca's voice was the robber's. She recognized the "scratchiness," "roughness," and "harshness" of the voice. Although the teller's in-court identification came some 15 months after the robbery, we find this time gap insufficient to outweigh the other indicators of reliability.
 
 
 11
 Nor does the record reflect that the voice identification was unduly suggestive. We note that the district court had Agtuca state his name twice and count to ten, rather than having him say words or phrases used by robber. Compare Domina, 784 F.2d at 1371 (voice identification upheld where defendant asked to repeat phrases uttered by robber during robbery, and teller testified that voice was "very similar" to robber's). Moreover, defense counsel had the opportunity to cross-examine the teller, in order to cast doubt on her identification.
 
 
 12
 Under these circumstances, we cannot say that the voice identification was "so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process." Id. at 1369. The district court did not abuse its discretion.
 
 III.
 
 13
 Agtuca challenges the district court's admission of Agent Albedyll's testimony that (1) he recognized a similar small label and pattern on tennis shoes belonging to Agtuca and tennis shoes worn by the robber in bank surveillance photographs; and (2) he recognized a similar dark wear pattern on blue jeans seized from the Fiero and jeans worn by Agtuca in a Polaroid photograph. We review the district court's ruling on the admission of evidence for abuse of discretion. United States v. Begay, 42 F.3d 486, 502 (9th Cir.1994), petition for cert. filed, (U.S. Apr. 27, 1995) (No. 94-9038).
 
 
 14
 Agtuca argues that the testimony constituted improper lay opinions. Pursuant to Fed.R.Evid. 701, lay opinion testimony is permissible so long as the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Both requirements are met here. Agent Albedyll's testimony about the shoes and pants was rationally based upon his observations of certain photographs and the pants seized from the Fiero. His testimony in both cases was helpful to a clear understanding of a fact in issue. The testimony about the shoes was helpful in determining whether the shoes worn by the robber may have been the same shoes as those belonging to Agtuca. And, the testimony about the pants was helpful in determining whether the pants seized from the Fiero belonged to Agtuca. Agent Albedyll's testimony was particularly helpful because it focused the jurors' attention on details that they may have otherwise missed. See Begay, 42 F.3d at 503 (trial court did not abuse its discretion under Rule 701 by allowing police officer to identify persons and narrate events depicted in videotape where jurors were not likely to see certain details). The admission of Agent Albedyll's testimony was not an abuse of discretion.
 
 IV.
 
 15
 Agtuca also challenges the district court's admission of his prior conviction for impeachment purposes. We again review the district court's admission for abuse of discretion. United States v. Browne, 829 F.2d 760, 762 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988).
 
 
 16
 The government sought to introduce Agtuca's 1972 conviction for residential robbery for impeachment purposes. According to the record, Agtuca received a 20-year sentence for the prior robbery, and was released from custody in 1992. Because Agtuca had not been released for more than 10 years, the conviction falls within Fed.R.Evid. 609(a)(1), and is admissible so long as the probative value outweighs the prejudicial effect.
 
 
 17
 It is well-established that "prior convictions for robbery are probative of veracity." United States v. Givens, 767 F.2d 574, 580 (9th Cir.), cert. denied, 474 U.S. 953 (1985). Agtuca's testimony, in which he denied his involvement in the robbery, offered an alternative explanation for his whereabouts, and claimed that Foust's brother committed the crime, was very important to the issues in the case. Agtuca directly placed his credibility at issue. See United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir.1995), petition for cert. filed, (U.S. June 30, 1995) (No. 95-5177). Under these circumstances, the district court could have reasonably concluded that the probative value of the evidence outweighed its prejudicial effect.
 
 
 18
 For the first time in his reply brief, Agtuca argues that he actually completed serving his time for the 1972 conviction in 1979, when he began serving a consecutive term for another offense. Therefore, Agtuca argues the district court was required to determine, under Fed.R.Evid. 609(b), that "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Unfortunately, Agtuca has pointed to no evidence in the record to verify his term of imprisonment for the prior robbery conviction. Our review of the record also failed to disclose any confirming evidence of Agtuca's claim that his sentence for the prior robbery ended in 1979. Without some evidence in the record to support Agtuca's claim, we will not find an abuse of discretion by the district court.
 
 
 19
 We nevertheless note that even if the district court erred by not making specific findings under Rule 609(b), the error was harmless. There was an overwhelming amount of evidence suggesting that Agtuca committed the current crimes, and Agtuca's credibility was already substantially impeached by the prosecution's witnesses. Agtuca's prior conviction was not overemphasized by the government; the government simply asked Agtuca for the date of his Agtuca's prior conviction and the date of his release from prison. We do not believe that admission of the prior conviction affected the jury's verdict.
 
 V.
 
 20
 Agtuca also complains about two occasions in which the district court restricted his cross-examination. It is well-settled that courts have wide discretion to limit cross-examination to avoid, among other things, harassment, repetition, prejudice or confusion. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Davis v. Alaska, 415 U.S. 308, 315-16 (1974). We review the district court's limitation on the scope of cross-examination for abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989).
 
 
 21
 First, Agtuca complains that the district court would not let him inquire into the basis for Agent Albedyll's testimony concerning the wear pattern on the pants seized from the Fiero. The transcript reveals that Agtuca was not precluded from pursuing the basis for Agent Albedyll's testimony; the district court simply sustained an objection to an argumentative question. Agtuca also argues that he was improperly prohibited from inquiring as to whether Agent Albedyll could have conducted a in-court voice line-up. But the district court had ruled that such a procedure was not required. Moreover, there was already evidence in the record from which defense counsel could argue that the in-court procedure was suggestive or unreliable. We find no abuse of discretion here.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Agtuca complains that this information, which was the only direct link between Agtuca and the robbery, came from a confidential informant. A tip from a confidential informant, when corroborated by independent police work, may be sufficiently reliable to provide reasonable suspicion for an investigatory stop. See Alabama v. White, 496 U.S. 325, 331 (1990). In this case, the information from the informant was corroborated. Agent Albedyll went to a Seattle hotel where the suspects were seen and found a red-stained bill, as well as the get-away truck with a gun and envelope marked "Ken" in it