*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0090p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 03-6232

JAMES RONALD HAZELWOOD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00143—Karl S. Forester, Chief District Judge.

Argued: December 7, 2004

Decided and Filed: February 23, 2005

Before: GUY and COLE, Circuit Judges; TARNOW, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Andrew M. Stephens, ANDREW M. STEPHENS & ASSOCIATES, Lexington, Kentucky, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Andrew M. Stephens, ANDREW M. STEPHENS & ASSOCIATES, Lexington, Kentucky, for Appellant. James E. Arehart, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge. Defendant-Appellant James Ronald Hazelwood pleaded guilty to charges of federal bank robbery and the use of a firearm to commit a violent felony. He now appeals three different sentencing enhancements applied by the district court. We find no error in the application of enhancements for reckless endangerment during flight and for Hazelwood's criminal history. However, because we find that the application of two separate penalties for making a "threat of death" and for the use of a firearm during a felony would constitute prohibited "double counting" under the Guidelines, and because we are not convinced that this error was harmless, we **VACATE** Hazelwood's sentence and **REMAND** for resentencing.

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I.**

The facts of this case, with only some minor sentencing-related exceptions, are undisputed. On December 16, 2002, Ronnie Hazelwood robbed a bank in Perryville, Kentucky. Pointing a semiautomatic pistol at the tellers, he stated, "Do what I say or I will kill you!" After taking $41,820 from the bank, he fled in a getaway car. The car was described over police radio, and an off-duty deputy (who happened to have his police radio on at the time) spotted the car and followed it. The officer was later joined by other police units. He testified that Hazelwood was traveling between 80 and 90 miles per hour. Hazelwood tossed the money out of the car, drove several miles down the road, abandoned the car, and escaped on foot. He was eventually apprehended later that afternoon at his girlfriend's house.

Hazelwood subsequently pleaded guilty to charges of federal bank robbery and use of a firearm to commit a violent felony. The plea agreement included sentencing recommendations, but did not include any explicit agreement on the length of the sentence itself. The agreement specifically stated that the two parties did not agree as to whether a "reckless endangerment during flight" enhancement was warranted. Although the agreement did include a waiver of Hazelwood's right to appeal his conviction, it did not include a waiver of his right to appeal his sentence.

The district judge sentenced Hazelwood in accord with the joint recommendation, but *sua sponte* applied the following enhancements not recommended in the agreement: (1) a "reckless endangerment during flight" enhancement; (2) criminal history enhancements based on what the district court found were four separate, unrelated convictions; and (3) an enhancement for the use of a threat of death during a felony. Hazelwood timely appeals each of these enhancements.

**II.**

When reviewing sentencing decisions, we review the district court's factual findings for clear error, while reviewing the district court's conclusions of law *de novo*. *See, e.g., United States v. DeJohn*, 368 F.3d 533, 544 (6th Cir. 2004).

**A. Reckless Endangerment Enhancement**

Hazelwood first argues that he should not have received a two-point enhancement for "reckless endangerment during flight" under U.S.S.G. § 3C1.2 because the district court did not determine specifically who was endangered, under what circumstances they were endangered, or whether or not any risk created during the flight was "substantial." An officer on the videotape of the chase notes that Hazelwood is traveling in excess of 90 miles an hour, but Hazelwood argues there is no independent way to verify Hazelwood's speed during the entire chase. He also argues that there was no finding by the judge that the neighborhood was residential or that any other drivers were endangered by Hazelwood's conduct.

The district judge based his findings on a videotape of the police chasing Hazelwood's vehicle, noting that:

> [T]here is no testimony or no proof other than what the officer said that the speed was in excess of 90 miles an hour on a wet road. I'm not sure if it was raining. I know the road was wet. It appeared to be raining. I saw the car cross the double yellow line on several occasions, and I saw a car getting out of his way as he turned about halfway through the tape, as he made the right turn. So I believe this conduct does require the two-level adjustment.

The judge thus found that at least one other driver (specifically, the driver who got out of Hazelwood's way as he was turning right) was endangered by Hazelwood's driving.

While the question of what constitutes endangerment is a mixed question of law and fact, it is highly fact-based.  Therefore, significant deference to the district court is required.  *See, e.g.*, *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001).  Many courts have held that a defendant who led police on a high speed chase where others are likely to be nearby can properly be given a reckless endangerment enhancement.  *See, e.g.*, *United States v. Mills*, 1 F.3d 414, 420-23 (6th Cir. 1993); *United States v. Miner*, 108 F.3d 967, 970 (8th Cir. 1997); *United States v. Alexander*, 48 F.3d 1477, 1493 (9th Cir. 1995).  And though Hazelwood notes that no harm resulted to anyone from his driving, no actual harm is required to show reckless endangerment.  *See, e.g.*, *United States v. Wright*, No. 00-5623, 19 Fed. Appx. 230 (6th Cir. Aug 28, 2001) (per curiam order); *United States v. Jimenez*, 323 F.3d 320 (5th Cir. 2003).

The district court found that the road was wet, that Hazelwood crossed the double yellow line several times while traveling at high speed, that there were numerous other vehicles on the road, and, most importantly, that at least one other car was forced to leave the pavement as Hazelwood abruptly turned right with his left blinker flashing.  These findings, considered *in toto*, are sufficient to support a finding of reckless endangerment.  Hazelwood has presented no evidence that would give us reason to disturb them.  We therefore affirm the district court's finding that Hazelwood's driving recklessly endangered other drivers.

## B. Criminal History Enhancements

### 1. Relevance of Three Prior Convictions

Hazelwood next argues that three of his prior convictions were "related," and that he thus should not have received separate criminal history points for each.  The facts at issue in the three prior convictions are as follows:

First, on December 26, 1995, Hazelwood rented a kerosene heater from Philips Repair.  However, he never made any of the required payments, and subsequently sold the heater to someone else without ever paying Philips. Philips Repair filed a criminal complaint in Marion County, Kentucky, on February 5, 1996.  Second, sometime early that same month, Hazelwood test-drove a used Mercury Cougar, but did not return the keys to the vehicle at the end of the drive.  On several occasions over the next two weeks, Hazelwood returned to the lot at night and took the car, always returning it before the lot opened the next morning.  Finally, on February 13, 1996, Hazelwood and another man robbed a business in Springfield, Kentucky, using handguns.  Part of the money handed over to Hazelwood was "bait" money with registered serial numbers.

The next day, Hazelwood was stopped in the Mercury Cougar for driving without a license plate.  In his pocket, officers found some of the "bait" money.  For the car theft, Hazelwood was charged in Marion County and convicted by a jury on June 20, 1996.  For the theft of the heater, Hazelwood pleaded guilty in Marion County in July 1996, with the understanding that his sentence would run concurrently with his car theft sentence.  For the robbery, Hazelwood pleaded guilty in Washington County pursuant to an agreement between the Marion and Washington County prosecutors that the sentences in all three cases would run concurrently.  He then received (after some later amendments) a combined sentence of 14 years, including 14 years for the robbery and 5 years for the car theft, running concurrently.

Hazelwood argues that the car theft and robbery offenses were "related" under the Guidelines because they were part of the same course of conduct, because there was no intervening arrest, and because they were effectively consolidated for sentencing.  In addition, he argues that the heater theft offense was effectively consolidated for sentencing, and thus that all three should be considered one felony offense for criminal history purposes.

Application Note 3 to U.S.S.G. § 4A1.2 defines "related" offenses for criminal history determination purposes as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest . . . . Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan,  or (C) were consolidated for trial or sentencing.

We review a district court's determination of whether prior convictions are "related" for clear error, regardless of which prong of the relatedness test we are evaluating. *See, e.g., United States v. Horn*, 355 F.3d 610, 612-15 (6th Cir. 2004).  For two convictions to be related due to having been part of a single common scheme or plan, they must have been jointly planned or the commission of one offense necessarily requires the commission of the other. *See, e.g., United States v. Irons*, 196 F.3d 634, 638 (6th Cir. 1999). The burden of showing such relatedness falls on the defendant.  *Id.*

As to the issue of whether the car theft and robbery offenses were related conduct, the district court found that the two offenses were separate, because the car had been taken from the lot on previous occasions not related to the robbery, because the two crimes involved different victims and trials, and because there was another man involved in the robbery who was in no way connected to the car theft.  None of these facts are disputed; all that Hazelwood argues is that the day of the robbery was also the day he stole the car from the lot.  The district court conceded that if the car had been taken only on the day of the robbery, the offenses would have been related.  However, since the car was taken on multiple occasions, the court found that the two offenses could not be said to have been part of a single common scheme or plan.  This is in line with our holding in *Irons*; since the commission of the robbery did not necessarily require a stolen car, and since no evidence has been presented by Hazelwood to indicate that the car was stolen specifically in preparation for the robbery, the offenses cannot be viewed as "related." *Id.*  As a result, the district court's determination on this point was not clear error.

Hazelwood also argues that all three of the relevant convictions here were "functionally consolidated" for sentencing, even if they were not explicitly consolidated.  The Supreme Court has previously held that a district court's evaluation of the "functional consolidation" of two sentences is an inherently fact-specific determination and should be reviewed deferentially. *Buford v. United States*, 532 U.S. 59, 66 (2001); *see also Horn*, 355 F.3d at 613 (noting that the level of deference required by *Buford* is "clear error.").  Though it is true that a formal consolidation order need not be entered in order for cases to be considered functionally consolidated for sentencing, *see, e.g.*, *United States v. Best*, 250 F.3d 1084, 1095 (7th Cir. 2001), this Court has held that sentences are not functionally consolidated "when offenses proceed to sentencing under separate docket numbers, cases are not related, and there was no formal order of consolidation." *United States v. McAdams*, 25 F.3d 370, 374 (6th Cir. 1994); *see also United States v. Carter*, 283 F.3d 755, 758 (6th Cir. 2002) ("The fact that judgment was pronounced on the same day with sentences to run concurrently, without more, does not establish that [the cases] were in fact consolidated.").

The district court noted that there was a guilty verdict in one case, as opposed to pleas in the other two, that each case proceeded to trial and sentencing under separate docket numbers, and that each case resulted in a separate, individualized sentence, despite the fact that they were to be served concurrently. As a result, the district court overruled Hazelwood's objection to the imposition of this enhancement. This conclusion was not clear error.

*2. Prior Attempted Burglary Sentence.*

Hazelwood also argues that another attempted burglary conviction should not be used against him because, based on its case number designation, it could not have been a felony conviction. The Government notes that this objection was not raised below; though Hazelwood did object to the use of this conviction at his sentencing, he did so on the basis that it did not involve any jail time. The district court found, on advice from the Probation Department, that the offense did involve jail time and that Hazelwood was merely given credit for time already served, which is why he did not serve any additional time for this offense.

Hazelwood never raised in district court the objection that this offense was not a felony, and has not pleaded any excuse for failing to do so. Though the Government argues that this means Hazelwood has waived this argument entirely, this Court will review a sentence enhancement not objected to below, but only for plain error. *See, e.g., United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004). However, Hazelwood has not presented evidence that would require us to vacate the sentence on this ground. The district judge found as a matter of fact that Hazelwood was sentenced to 120 days in prison (with credit for 120 days previously served), based on testimony from the Probation Officer. Hazelwood's mere assertion, without any documentation, that the case number designation on the conviction record means that he could not have been sentenced to jail time is not sufficient evidence to prove plain error as to this factual finding, and thus his objection to this enhancement must fail.

## C. "Threat of Death" Enhancement

Hazelwood finally disputes the district court's imposition of a two-point enhancement for a "threat of death" under U.S.S.G. § 2B3.1(b)(2)(F), noting that the district judge had mentioned that, on this point, he had "certainly got an argument that [he could] make to the Court of Appeals." Hazelwood relies on an Eleventh Circuit opinion that states that sentences imposing an increase for "the use of a firearm or dangerous weapon, should not include an independent increase, whether by departure or otherwise, for an express threat of death." *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (citing *United States v. LNU*, 16 F.3d 1168, 1171 (11th Cir. 1994)). In that case, the defendant had robbed a bank with a gun, and had also given a note to the tellers that stated he would kill them. The district judge there imposed both a "brandishing or possessing a dangerous weapon" three-point enhancement under U.S.S.G. § 2B3.1(b)(2)(E) *and* a "threat of death" two-point enhancement under U.S.S.G. § 2B3.1(b)(2)(F). The Eleventh Circuit held this to be improper, noting that "a threat of death is implicit when a dangerous weapon is displayed . . . ." *Bourne*, 130 F.3d at 1447.

The Government has three responses to Hazelwood's argument. First, it notes that the "threat of death" enhancement here was made for the use of a threat separate from that implied by the brandishing of the firearm. Second, the Government notes that Hazelwood's "firearm enhancement" was not in fact a firearm enhancement under § 2B3.1(b)(2). Rather, it was a conviction on a separate "use of a firearm to commit a violent felony" charge, under 18 U.S.C. § 924(c)(1)(A). As a result, claims the Government, Hazelwood is not receiving two separate § 2B3.1(b)(2) enhancements. Finally, the Government argues that an application note that had previously forbidden the use of a "threat of death" enhancement in situations when a firearm-based enhancement or charge is applied has since been deleted from the Guidelines. *Compare* U.S.S.G. § 2K2.4 n.4 (2004) *with* U.S.S.G. § 2K2.4 n.4 (1998); *see also United States v. Smith*, 981 F.2d 887, 892-94 (6th Cir. 1992).

In *Smith*, this Court held squarely that the 1992 version of the Guidelines (specifically, Application Note 2 to § 2K2.4) prohibited the use of a § 2B3.1(b)(2) enhancement in situations such as this one where a defendant has also been convicted of a firearm violation under 18 U.S.C. § 924(c).[1] The Court noted that the defendant had made a threat that was technically separate from the act brandishing the firearm when he said "This is a stickup. Give me your money. Hurry up or you will be dead." Observing that § 2K2.2 n.4 prohibited the use of "specific offense characteristic" enhancements resulting from the "possession, brandishing, use, or discharge" of a firearm, the Court held that the defendant's express oral threat of death, while by nature a different act from brandishing the gun, was "related to the use of the firearm," since it would be obvious that the threatened killing would involve the use of the gun. *Smith*, 981 F.2d at 893. As a result, we held that the threat spoken by the defendant was related to the use of the firearm for which the 924(c) conviction was imposed, and thus that counting the threat separately would result in "double counting" that was explicitly impermissible under Application Note 2 to § 2K2.4. *Id.*

---

[1] In between the briefing and opinion in *Smith*, the "threat of death" section was moved from § 2B3.1(b)(2)(D) to § 2B3.1(b)(2)(F) but the *Smith* court, along with every other court to consider the issue, has held that the move (and slight wording changes in both this and other portions of later Guideline versions) had no effect on its holding. *See Smith*, 981 F.2d at 892.

While most of the content of Application Note 2 was later moved to Note 4, its content has not been altered in any way that should affect the *Smith* Court's conclusion. Although the example specifically mentioning robbery and the "threat of death" enhancement was removed, new language was added that precluded the use of enhancements for *any* firearm-related conduct related to an underlying offense when a defendant is also convicted under § 924(c). *Compare* U.S.S.G. § 2K2.4 n.4 (2004) *with* U.S.S.G. § 2K2.4 n.4 (1998); *see also United States v. Reevey*, 364 F.3d 151, 158-59 (4th Cir. 2004) (invalidating a sentence on exactly the same grounds as *Smith*, and rejecting the Government's argument that the 2000 amendments to the Guidelines should alter this conclusion). Every other circuit to review this or related questions has agreed with *Smith*. *See, e.g.*, *Reevey*, 364 F.3d at 158-59 (4th Cir. 2004); *United States v. Franks*, 230 F.3d 811, 813-14 (5th Cir. 2000); *United States v. Murray*, No. 97-6735, 1999 WL 187192 (4th Cir. Apr. 6, 1999) (unpublished opinion); *United States v. Triplett*, 104 F.3d 1074, 1082 (8th Cir. 1997), *cert. denied*, 520 U.S. 1236 (1997); *United States v. Duran*, 4 F.3d 800, 804 (9th Cir. 1993); *United States v. Farrier*, 948 F.2d 1125,1127 (9th Cir. 1991). As the Fourth Circuit noted in *Reevey*, the relevant inquiry under the current version of Application Note 4 is:

> whether the threat-of-death enhancement was applied 'for possession, brandishing, use, or discharge of an explosive or firearm.' In [defendant Reevey's] case, both of the threats made by [Reevey] were to *shoot* Jones (with a handgun that Reevey had already displayed), and they involved the firearm Reevey was convicted of possessing under § 924(c).

364 F.3d at 158-59.

Hazelwood's case is no different from Reevey's, or, for that matter, Smith's. Reevey, Smith, and Hazelwood all brandished guns, and all verbally threatened to kill others while doing so, during the course of a felony. All three defendants' threats were directly related to the firearm each was brandishing, regardless of whether they said "I will shoot you" or more generally "I will kill you." *See also Duran*, 4 F.3d at 804 (reaching the same result where a defendant had merely said "Don't move or we'll kill you."). The current Application Note 4 is clear that enhancements stemming from the "possession, brandishing, use, or discharge" of a firearm related to the underlying offense cannot be imposed for acts related to the conduct for which a defendant was also convicted under 18 U.S.C. 924(c). *See, e.g.*, *Reevey*, 364 F.3d at 158-59. We therefore find that the 2000 amendments to the Guidelines do not dissuade us from applying the holding of *Smith* to Hazelwood's case. As a result, since the threat of death in the instant case was related to Hazelwood's brandishing of a firearm, the imposition of the two-point threat enhancement in his case was improper. The removal of these two points would result in a sentencing range where the lowest point (100 months) would be lower than the 120-month sentence Hazelwood received for the count to which this enhancement applied. As a result, under Sixth Circuit jurisprudence prior to the issuance of *United States v. Booker*, 543 U.S. ----, 125 S. Ct. 738 (2005), Hazelwood's sentence would have been vacated and his case remanded for resentencing. *See, e.g., Smith*, 981 F.2d at 893-94 (citing *United States v. Rosado-Ubiera*, 947 F.2d 644, 646 (2d Cir. 1991)).

### III.

Subsequent to oral argument in the instant case, the Supreme Court issued its opinion in *Booker*, effectively rendering the Sentencing Guidelines "advisory" for the purposes of all cases currently on appeal. *Booker*, 125 S. Ct. at 764-65, 768-69. The parties submitted supplemental briefs regarding the applicability of Booker. Both parties directed their arguments to any potential Sixth Amendment violations in Hazelwood's case, and not to the applicability to Hazelwood's Guidelines-related assignments of error previously preserved for appeal. For example, the Government argues that *Booker* is not applicable to the instant case because Hazelwood did not raise a Sixth Amendment violation below, and because he has not shown plain error on appeal.

In the remedial opinion from *Booker*, the Supreme Court was very clear: "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when

sentencing." *Id*. at 744-45; *see also id*. at 744 (requiring "judges to consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant'" (citing 18 U.S.C. § 3553(a)(4))); 18 U.S.C. § 3553(a)(4). The portions of § 3553 on which these statements rely were not severed by *Booker*. Accordingly, insofar as Hazelwood is challenging the application of the Guidelines to his case, *Booker* does not affect the analysis of whether the district court erred in this case. Since, regardless of whether the Guidelines are mandatory or merely advisory, district courts are *required by statute* to consult them, and since a district court's misinterpretation of the Guidelines effectively means that it has not properly consulted the Guidelines, we hold that it was error for the district court to apply the threat of death enhancement in this case.

However, the fact that there was error in Hazelwood's sentencing does not necessarily mean that he is entitled to resentencing. *See, e.g.*, Fed. R. Crim. P. 52(a). Because Hazelwood properly preserved his argument that the district court erred in applying the enhancement, we must determine whether any error in sentencing was harmless, as opposed to conducting a plain error analysis. *Compare id. with* Fed. R. Crim. P. 52(b); *see also United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless — *i.e.* any such error "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992).

Here, it is likely that the error in imposing the additional enhancement did affect the sentence imposed by the district court. Notably, the judge, in overruling Hazelwood's objection to the threat of death enhancement, stated that Hazelwood "certainly [had] an argument that [he] can make to the Court of Appeals." The judge later specifically noted in imposing the sentence that he had overruled Hazelwood's objections to the aforementioned enhancements. Further, as we have noted, had the threat-of-death enhancement not been applied, the lower limit of the applicable Guidelines range would have been below the 120-month sentence actually imposed on Hazelwood, where that sentence was already at the lowest limit of the Guidelines range as calculated by the sentencing judge. The sentencing judge did indicate that if he had sustained "some" of Hazelwood's objections to the pre-sentence report, he would not have sentenced Hazelwood to the low end of the applicable range. J.A. 59. However, the judge did not say which objections he would need to have sustained before sentencing Hazelwood above the lowest level permitted by the Guidelines, nor did he say what he would have done he sustained only one objection. (It is worth noting that had all of Hazelwood's objections been sustained, the applicable range would have been 46-57 months.) As a result, it is at least possible, even under a non-mandatory guidelines system, that the judge, considering the proper Guideline range, would have sentenced Hazelwood to a sentence below that which he actually received. The district court's error thus cannot be considered harmless. *See, e.g.*, *Williams*, 503 U.S. at 203 (finding harmless error only where the reviewing court concludes the error did not affect the sentence imposed); *United States v. Gill*, 348 F.3d 147, 155 (6th Cir. 2003). Therefore, a remand for resentencing is warranted.

Because a remand for resentencing is appropriate, we need not determine whether any Sixth Amendment violations at Hazelwood's sentencing constituted plain error. *Cf. United States v. Oliver*, No. 03-2126, 2005 WL 233779, at *6-8 (6th Cir. Feb 2, 2005); *United States v. Bruce*, No. 03-3110, 2005 WL 241254, at *16-19 (6th Cir. Feb. 3, 2005).

## IV.

For the preceding reasons, we **VACATE** Hazelwood's sentence and **REMAND** this matter for resentencing consistent with this opinion and *Booker*.