**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0186n.06
Filed: April 9, 2008

**Nos. 06-3778 and 06-3780**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff- Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DAVID GARNER AND JAMES CARR, | ) | OHIO |
| | ) | |
| Defendants- Appellants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: SILER, CLAY, and COOK, Circuit Judges.

**SILER**, Circuit Judge. In 2005, Defendants David Garner and James Carr (collectively, the "Defendants"), along with multiple co-defendants, were indicted on charges of conspiracy to distribute crack cocaine. Garner and Carr were also indicted on other substantive counts of distribution of crack cocaine. The Defendants were convicted on all counts. The Defendants now appeal their convictions for the conspiracy counts, arguing that there was insufficient evidence to support the convictions. Garner additionally appeals his sentence, arguing that his conviction in the present case should run concurrently, not consecutively, to a previously imposed, and then un-served, sentence.

For the following reasons, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

I. Factual Background

In 2003, the Cleveland Police Department, the Cuyahoga Metropolitan Housing Authority, and the Federal Bureau of Investigation began a long-term joint investigation to target drug trafficking in the Morris Black Estates ("Morris Black"), a housing development in Cleveland, Ohio. While law enforcement relied on street sources, citizens, and victims of crime to aid their investigation, they also employed Charles Vaughn as a confidential informant to make controlled purchases of drugs. During the same time frame as the joint investigation, but outside of Morris Black, the Drug Enforcement Agency arrested Deonta Robinson, James Johnson, and Jermaine Green, who agreed to cooperate with the investigation.

Robinson and Johnson told law enforcement officers that twice a month the men jointly purchased half kilograms of powder cocaine. After purchase, Robinson cooked the powder cocaine into crack cocaine and then sold the crack cocaine in varying quantities. Through the cooperation of Robinson, Johnson, and Green, officers identified two buyers and sellers of crack cocaine as the Defendants.

II. Indictment and Trial

Garner and Carr were indicted for conspiracy to distribute narcotics and for distribution of various amounts of crack cocaine between August 2003 and December 2004. Fourteen other individuals, including Robinson, Johnson, and Green, were also indicted. All but three of the charged defendants pled guilty to the crimes as charged in the indictment.

At trial, the Government elicited testimony from various co-defendants, experts in narcotics, law enforcement officers, and Vaughn.

Sylvester Hudson was a co-defendant who testified that he bought drugs from Garner occasionally and sold drugs at a house in Morris Black, identified only in the trial testimony as "Lisa's House" (the "House"). Hudson also middled, a term that means Hudson served as a middleman between Garner and buyers, and witnessed these transactions, in exchange for which Garner paid Hudson with drugs. Hudson also purchased drugs from Garner. Hudson testified that both he and Carr used and sold drugs at the House. Hudson told the jury that he and Carr used drugs together and provided drugs to each other. In the fall of 2003 and into 2004, Hudson and Carr used and shared drugs every day. During this time, Hudson also saw Carr sell drugs, making sales daily either in the House or on the street. Carr also middled drugs, for which he received either drugs or cash as payment. Carr middled for co-defendants Kevin Taylor, Wayne Johnson, Garner and Hudson.

Robinson testified that between August 2003 and December 2004, he sold drugs to Garner: two or three times in 2003, and two or three times in 2004. However, Robinson admitted that the quantities Garner purchased were what Robinson would consider personal use quantities (i.e., not large enough to distribute). Robinson testified that these sales took place in Morris Black. Robinson did testify that Carr middled for him "a couple of times" between August 2003 and December 2004. Robinson would also pay Carr with drugs for delivering messages for Robinson. Robinson sold Carr crack cocaine and witnessed Carr sell crack cocaine to co-defendant Hudson.

Green testified that he and Garner were friends, and Green sold Garner drugs once or twice between August 2003 and October 2004. Green sold Garner "eightballs" and "quarters," which are 6.5 to seven grams, and 200 grams, respectively. Green witnessed Garner sell drugs daily to people on the street in Morris Black. Green sold drugs to Carr three to four times per week. Carr also middled for Green "for months," bringing him either money or customers. Carr's deals were conducted throughout Morris Black.

Maurice Merritt testified that although he knew both of the Defendants, he did not see Garner engage in drug sales. Merritt did, however, testify to supplying Carr with crack cocaine "every other day," or two to three times per week. Carr also middled for Merritt, bringing him money and customers in exchange for drugs.

Detective Maurice Kennedy witnessed Garner make hand-to-hand transactions (money in exchange for suspected crack cocaine) five to six times. Kennedy also saw Garner use middlemen to run drugs and money and witnessed Carr make hand-to-hand transactions in Morris Black. Kennedy described seeing Carr exchange money for suspected crack cocaine.

Van Evans testified that he saw Carr buy drugs from co-conspirators David Sergeant, Wayne Johnson, Merritt, and Garner. Evans also testified that between August 2003 and February 2005, he sold Garner crack cocaine once or twice a month, in quantities of either seven or fourteen grams. These drug sales took place in Morris Black. Evans also saw Garner selling drugs around Morris Black and giving drugs to Carr.

Vaughn testified that an as undercover informant he purchased drugs from Garner on two occasions. He further testified that he purchased drugs from an individual for whom Carr middled.

Vaughn also witnessed Carr pool drugs with two unindicted individuals in order to create a quantity sufficient to sell to Vaughn.

III. Conviction and Sentencing

Garner, Carr, and their co-defendant Kevin Taylor were convicted of conspiracy to distribute narcotics, as well as the substantive counts of distribution of crack cocaine. Following the trial, the district court sentenced both Garner and Carr to prison terms of 240 months.

In January 2006, in an unrelated case, another district judge for the Northern District of Ohio sentenced Garner to seventy-two months of incarceration for aiding and abetting a car jacking, and brandishing a firearm during a crime of violence. In sentencing in this case in May 2006, the district court ordered that Garner serve his seventy-two and 240 month sentences consecutively.

STANDARDS OF REVIEW

When a defendant challenges the sufficiency of the evidence to support his conviction, we ask whether, after reviewing the evidence in the light most favorable to the Government, any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 433 U.S. 307, 318-19 (1979). In reviewing the evidence, we not only review it in the light most favorable to the Government, but we also give the Government "the benefit of all reasonable inferences from the testimony." *United States v. Carver*, 470 F.3d 220, 232 (6th Cir. 2006) (quoting *United States v. Abate*, 438 F.3d 554, 589 (6th Cir. 2006)) (internal quotations omitted).

We review a sentence imposed by a district court for reasonableness. *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *United States v. Booker*, 125 S.Ct. 738, 765 (2005). Both the district court and this court are guided by the sentencing factors as set forth in 18

U.S.C. § 3553(a). *Id.* Further, when reviewing sentencing decisions, we review the district court's factual findings for clear error, and its conclusions of law de novo. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

DISCUSSION

I. The Government presented sufficient evidence to support the jury's determination that the Defendants conspired to distribute crack cocaine.

The elements of a drug conspiracy, as codified in 21 U.S.C. § 846, are an agreement to violate drug laws and that each conspirator was aware of, intended to join, and participated in that agreement. *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990)). Once the prosecution establishes a drug-related conspiracy, the evidence connecting the defendant to that conspiracy need only be slight, and a conspiracy can be inferred from circumstantial evidence. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

In establishing a drug related conspiracy, evidence of a mere buyer-seller relationship will not alone serve as proof of a conspiracy. *Id.* However, evidence of "repeat purchases provides evidence of more than a mere buyer-seller relationship," and that, along with the quantity of drugs sold, can support an inference of conspiracy. *Id.* (citing *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003)).

Here, there is sufficient evidence to establish a drug-related conspiracy under § 846. The Government established a conspiracy to buy and sell drugs that moved from Robinson and Johnson as suppliers, down through lower-level dealers and middlemen. Two of those lower-level dealers

and middlemen were the Defendants. Ample evidence showed that both men repeatedly bought drugs from, sold drugs to, and middled drugs for various co-conspirators. As the evidence connecting the Defendants to the conspiracy need only be slight, a rational jury had sufficient evidence with which to convict the Defendants. There was not a mere buyer-seller relationship here. The witnesses testified to multiple drug transactions, some of which occurred on a daily, weekly, or monthly basis. From this evidence, a rational jury could find guilt.

II. The district court properly sentenced Garner to consecutive, not concurrent, sentences.

Section 924(c) of Title 18 U.S.C. requires that a court sentence a defendant who brandished a firearm in the commission of a crime to a term of imprisonment of not less than seven years. The statute also provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c).

Garner, while citing to no authority, argues that the district court improperly relied on the language of § 924(c) when sentencing him. He argues that because the car jacking was an unrelated crime, not committed in furtherance of the conspiracy, the court was not bound to require the sentences to run consecutively. Without any authority contrary to the district court's decision, we find that the district court correctly required Garner to serve the sentences consecutively.

AFFIRMED.