**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0598n.06**
**Filed: August 21, 2007**

**No. 05-6620**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *Plaintiff- Appellee,* | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ANTORIC WILSON | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellant.* | ) | **OPINION** |
| | ) | |

**BEFORE:    COLE and McKEAGUE, Circuit Judges; COHN, District Judge.**[*]

**AVERN COHN**, **District Judge**:  This is a criminal case.  Defendant-Appellant Antoric Wilson ("Wilson") appeals his sentence based on his guilty plea to one count of conspiracy to distribute fifty grams or more of crack cocaine and 500 grams or more of powder cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B).  Wilson raises three related issues on appeal: (1) whether the district court's application of a two-level enhancement for obstruction of justice based on his testimony at the sentencing hearing was in error; (2) whether the district court's denial of a three-level reduction for acceptance of responsibility was in error; and (3) whether his sentence is substantively or procedurally unreasonable.

As we find no error in the district court's decision, we will affirm Wilson's sentence.

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 30, 2004, a search warrant was executed at Wilson's residence in Chattanooga, Tennessee. Approximately 1,100 grams of powder cocaine, forty grams of crack cocaine, 750 grams of marijuana, $7,500 in cash, and an SKS semiautomatic assault rifle were seized from Wilson's bedroom. Wilson was arrested that same day. After waiving his *Miranda* rights, Wilson made a statement to Detective Narramore and Detective Ballard ("investigators"), of the Chattanooga Police Department.

On November 4, 2004, Wilson pled guilty to one count of conspiracy to distribute fifty grams or more of a mixture and substance containing cocaine base and 500 grams or more of powder cocaine. Three related drug charges were dropped. The written agreement contains a statement of the factual basis for the plea, in which Wilson admitted possession of the drugs and the rifle found in his bedroom. The plea agreement also stated that Wilson told investigators the following:

> [H]e had been selling crack for $800 an ounce, $800 for an ounce of powder cocaine, and $20 for a bag of marijuana. Defendant gave the name of his source for cocaine and stated that the source was "fronting ounces" of cocaine to him, then the source fronted him a kilogram of powder cocaine. Wilson stated that the price for the kilogram of cocaine was $25,000. Wilson stated that he had sold cocaine regularly in the past.

(J.A. 31.)

The probation office prepared a Pre-sentence Investigation Report ("PSR"). The probation office based the amount of drugs attributable to Wilson on the investigators' report that Wilson had told them that he "sold four ounces of cocaine hydrochloride per week for the last two years and that he sold two ounces of crack cocaine per week for the past two or three

2

months." (J.A. 228.) Based on these amounts, the probation office recommended a base offense level of 36.

Wilson filed an objection to the amount of drugs attributed to him, arguing that he told the investigators that he had been selling drugs for two months, not two years. The district court held an evidentiary sentencing hearing on February 14, 2005. Detective Ballard testified that Wilson told investigators that he sold four ounces of powder cocaine per week for the last two years, and that he sold two ounces of crack cocaine per week for the last two to three months. Ballard also testified that Wilson said that a man named Phillip Grayson fronted him the kilogram of cocaine powder seized at his residence for $25,000. The district court asked Ballard whether it was likely that someone who had been selling drugs for a short period of time would be fronted $25,000 worth of cocaine. Ballard answered that a person would have to be involved in drug trafficking with the source of the drugs for "quite some time" to establish trust before the source would front that much cocaine to a dealer.

Wilson then testified, stating that he had only one drug supplier –a man known only as "Tennessee" or "Rico." Wilson stated that he began getting cocaine from Tennessee/Rico two months before his arrest, when he began selling drugs for the first time. Wilson stated that Tennessee/Rico fronted him the kilogram of cocaine powder the day before his arrest, and that this was the first time he ever received such a large amount of cocaine. Wilson said that Tennessee/Rico fronted him a kilogram of cocaine because he wanted to help Wilson record a CD to get started in the music business.

Wilson further testified that he had been using cocaine daily for two years. He also stated that he had not been employed since 2000, and that he supported his drug habit by selling CDs,

shirts, and by breeding pit bull dogs and selling their puppies. Wilson stated that he sold pit bulls for $200 to $400 per puppy and that he usually had three or four litters per year. Wilson also stated that the $7,500 found in his dresser came from selling CDs, puppies, and shirts.

On cross-examination Wilson admitted that after his arrest he initially lied to the investigators by telling them that he and his brother had found the cocaine in the woods. Wilson also admitted that he later told investigators that a man named Phillip Grayson had been fronting him cocaine, which was also a lie.

The district court then questioned Wilson about his distribution of cocaine. Wilson stated that he started selling cocaine two or three months before his arrest by contacting two or three individuals with whom he used drugs. These individuals became his customers and also bought drugs for other people. Wilson stated that he bought two ounces of cocaine per week, and that he personally used some of the drugs. Wilson explained that he could get approximately twenty-two $100 packages out of an ounce of cocaine, which he would sell in about three days, and that the typical cocaine user spends about $150 to $200 per day buying drugs.

After Wilson testified, the government argued that according to Wilson's testimony, his two-year drug habit would have cost him approximately $30,000 to $40,000 a year. Since Wilson was not employed during this time, the district court could reasonably conclude that he was selling drugs during this time.

The district court then stated its calculation of Wilson's offense level. First, the district court adopted the PSR recommendation of a base offense level of thirty-six based on the amount of drugs attributable to Wilson. The district court found that Wilson sold powder cocaine for approximately two years before his arrest, and sold crack cocaine for approximately two months

4

before his arrest. Next, the district court applied a two-level enhancement for possession of a firearm, raising the offense level to thirty-eight. The district court then *sua sponte* found that Wilson obstructed justice by committing perjury[1] during his sentencing testimony in an attempt to have his sentence reduced, and applied a two-level enhancement under the Federal Sentencing Guidelines (the "Guidelines"), section 3C1.1.[2] The district court said that it believed Wilson was untruthful about "the drug quantities, his income, his expenses, his source of supply for the drugs, the number of customers he had, how he located his customers, [and] what the customers were doing with the drugs when he gave the drugs to them." (J.A. 163.) This enhancement raised Wilson's offense level to forty. The district court also found that Wilson did not accept responsibility for his crime and denied his request for a three-level reduction under the Guidelines, section 3E1.1.[3]

---

[1] The portions of Wilson's testimony that the district court found to be "perjurious" are better characterized as "false statements."

[2] U.S.S.G. § 3C1.1 states:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

[3] U.S.S.G. § 3E1.1 states:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate

Wilson's attorney then set forth mitigating factors –citing to Wilson's youth, lack of education, and the fact that he grew up in a fatherless household. Wilson's attorney also argued that Wilson did not purposely make false statements during his sentencing testimony, but was probably confused. Wilson's attorney asserted that Wilson was a slow learner and pointed out that while he received an attendance certificate from high school, he did not graduate.

Altogether, the district court calculated an offense level of forty and a criminal history category of I, which yielded an advisory Guidelines range of 292 to 365 months imprisonment. The parties agreed to abide by a provision in the plea agreement stating that the sentence must be within the Guidelines range. The district court accepted this provision, while noting that *Booker* made the Guidelines advisory. After stating that it had also considered the factors under 18 U.S.C. § 3553(a), the district court announced a sentence of 292 months.

On March 24, 2005, the district court ordered Wilson to undergo a psychological evaluation, based on a joint motion by the parties for a competency evaluation. In granting the motion, the district court agreed to withhold sentencing pending the evaluation. Wilson was found to be competent, although of lower-than-average intelligence. Wilson waived a competency hearing.

The district court resumed the sentencing hearing on September 16, 2005. Wilson's attorney argued that the obstruction of justice enhancement should be removed and that the reduction for acceptance of responsibility should be applied because Wilson has lower intelligence and did not intentionally give false testimony during the sentencing hearing. The

their resources efficiently, decrease the offense level by 1 additional level.

6

district court disagreed, holding that since Wilson was found to be competent, the prior finding that he intentionally made false statements stood. The district court announced its intention to sentence Wilson to 292 months. At this point, the parties agreed to waive the provision in the plea agreement that stated that the sentence must be within the Guidelines range, and jointly requested a lower sentence. The district court accepted the waiver, and imposed a sentence of 240 months imprisonment. Wilson's attorney requested a further reduction for acceptance of responsibility, which the district court denied.

Wilson filed a timely notice of appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  ANALYSIS

### A.  The Obstruction of Justice Enhancement

#### 1.  Standard of Review

A district court's ruling that a defendant obstructed justice is a finding of fact which will be disturbed on appeal only if clearly erroneous. *United States v. August*, 984 F.2d 705, 714 (6th Cir.1992), *cert. denied*, 510 U.S. 854 (1993).

Where a defendant objects to an enhancement resulting from his testimony, the district court must identify the portions of the testimony found to be false, and make a finding that the false testimony concerned a material matter, and was given intentionally, rather than as the result of confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94-95 (1993); *United States v. Paulette*, 457 F.3d 601, 607 (6th Cir. 2006).

#### 2.  Argument

7

Wilson says that the district court erred in applying the obstruction enhancement because while it found some of his testimony to be inconsistent with the statement he gave to investigators, it failed to cite to the actual testimony it found to be false and also failed to make a finding that the testimony was material and intentional. Wilson argues that the inconsistencies were not intentional. Wilson says that he is mentally handicapped and that he was subjected to close scrutiny on cross-examination by both the government and the district court at the sentencing hearing, which caused him to become confused. Wilson also argues that the district court's comments that Wilson appeared to be "motivated" to give false statements in an effort to reduce his offense level and sentence, were not a finding of materiality because:

> Materiality is determined at the time a statement is made and requires the ability or tendency to influence a decision. *United States v. Lee*, 349 F.3d 412, 416 (6th Cir. 2004). Motive, on the other hand, is the inducement that leads or temps one to act. BLACKS LAW DICTIONARY.

Petitioner's Brief, at 17.

### 3. Resolution

#### a.

The district court did not err in applying the obstruction enhancement. The sentencing hearing was quite lengthy and split-up over two days. While the district court did at times summarize the testimony it found to be false, it also discussed at length the specific testimony it found to be false. For instance, after the district court first raised the issue of whether it should apply the obstruction enhancement, Wilson's attorney and the district court engaged in the following exchange:

> [WILSON'S ATTORNEY]: [I] don't believe that he has a motive, in his responses, that someone of a higher education level or someone with a higher

intelligence would form. He is a slow learn[er]. He's slow to respond, slow to understand. being a special --

THE COURT: So you want the court to believe that the defendant received drugs worth $25,000 from some person he only knows as Rico or Tennessee, he's only known for a couple of months, that he met him at some point through a dog transaction? I don't know that it takes much in the way of intelligence for someone to create a fictitious person.

(J.A.163-64.)

The district court's comment clearly reflects that it found Wilson's testimony false regarding the circumstances leading up to his possession of the kilogram of powder cocaine, and the length of time he had been dealing drugs.

The district court also compared Wilson's testimony regarding his drug distribution to his testimony about his dog breeding activities. The district court noted that while Wilson was able to discuss in depth the breeding and selling of pit bulls and even drew distinctions between the selling prices of puppies bred from several different combinations of dogs, he had trouble testifying to his selling of cocaine despite the fact that he was referring to $100 or $250 sales, which involve little aggregation or math skills. (J.A. 167-68.) In particular, the district court noted that Wilson's demeanor on the stand led it to believe that he was giving false testimony:

> [I] was convinced, based upon his testimony and the way he answered the questions, he actually did have some experience in breeding dogs and selling dogs, because he was direct, he had command of the facts, and was knowledgeable. With respect to the drug sales, I found him to be very evasive, very, very vague, and very general. And the Court's conclusion was, he was not being truthful with respect to those.

(J.A. 167.)

9

**b.**

Next, Wilson's argument that the district court's observation that Wilson appeared motivated to lie in an effort to have his sentence reduced is not the equivalent of a finding of materiality is unavailing. Under the Guidelines, a "material" statement is one that, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment n. 6. Wilson's testimony as to the amount of drugs attributable to him, was unquestionably material to the length of his sentence because the primary factor in determining his base offense level was the amount of drugs attributed to him. Thus the district court's observation that Wilson was motivated to lie in order to reduce his sentence encompassed a finding of the materiality of his false statements.

**c.**

The district court also found that Wilson knowingly made false statements. First, the district court specifically noted that Wilson was found to be competent after a psychological evaluation. Second, the district court specifically stated that it was rejecting Wilson's argument that his inconsistent testimony was the result of low intelligence, confusion, or inadvertence, because Wilson had demonstrated that he knew the difference between truth and lies:

> [A]ccording to the defendant's own admission, although he did not create a fictitious person, he did make up a story about someone else earlier,[4] and the reasons he made it up was because he was under pressure from the officers. And here today he's under pressure because of the sentence that he might receive. So I don't know that it's a stretch of the imagination to think that the defendant has the capability of creating a false story if he thinks it would benefit him. He's already admitted he's done it before.

---

[4] The district court appears to be referring to Wilson's testimony that he told investigators that Phillip Grayson fronted him cocaine, which was a lie.

10

(J.A. 164, footnote added)

## B. Acceptance of Responsibility

### 1. Standard of Review

We review for clear error a district court's determination of whether a defendant has accepted responsibility for his crime. *United States v. Robinson*, 152 F.3d 507, 512 (6th Cir. 1998). A defendant who pleads guilty is not automatically entitled to a reduction for acceptance of responsibility as a matter of right. *United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir. 1995). Wilson bears the burden of establishing that he has accepted responsibility within the meaning of U.S.S.G. § 3E1.1. *Id.* (citing *United States v. Meachem*, 27 F.3d 214, 217-18 (6th Cir. 1994)). Also, the application of the obstruction enhancement ordinarily indicates a lack of acceptance, although it is not an absolute bar. U.S.S.G. § 3E1.1, comment n. 4.

### 2. Argument

Wilson argues that the district court's erroneous finding of obstruction led it to erroneously deny him a three-level reduction based on his acceptance of responsibility. Wilson says that he pled guilty to the conspiracy because he was factually guilty, and signed a detailed factual stipulation supporting his guilty plea. Wilson points out that although he disputed portions of Detective Ballard's account of his post-arrest statement regarding the length of time he sold drugs, he acknowledged that he trafficked cocaine from the moment he was detained by law enforcement.

### 3. Resolution

Wilson has not demonstrated that the district court clearly erred in denying him a reduction for acceptance. A defendant who is not forthcoming as to his offense conduct in an

11

attempt to affect his sentence has not accepted responsibility. *See United States v. Garcia*, 252 F.3d 838, 841-42 (6th Cir. 2001) (district court properly denied an adjustment for acceptance where a defendant testified at the sentencing hearing and was frequently evasive as to his drug trafficking activities.) Here, the district court's rejection of a reduction was based on its finding that Wilson's description of his drug trafficking activities was evasive, illogical, and contrary to it's experience and knowledge of the activities of drug dealers.

Moreover, Wilson has failed to show that the district court committed an error "substantially affecting his rights." Fed. R. Crim. P. 52(a).[5] If a reviewing court is certain that an alleged error "did not affect the district court's selection of the sentence imposed," the court will not vacate the sentence and remand. *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Here we can be certain that the alleged error was harmless because the district court expressly stated that "[i]f the Court had found that the [G]uidelines were somewhat different, the Court can conceive of no reason why it would have imposed a different sentence." (J.A. 207.) Moreover, we note that if the district court reduced the offense level by three, this would have resulted in a offense level of thirty-seven and a criminal history category of I, which yields an advisory range of 210-262 months.[6] The 240-month sentence that the district court selected was within this range. Therefore, a

---

[5] Fed. R. Crim. P. 52(a) states:

> (a) Harmless Error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

[6] We refer to the 2004 Sentencing Guidelines Manuel, which the probation office used to determine Wilson's sentencing recommendation.

correction of the alleged error as to acceptance would not have resulted in a lower sentence.

## C. Substantive and Procedural Due Process

### 1. Standard of Review

We recently explained in *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) that:

> We have now split our reasonableness review into two inquiries: procedural reasonableness and substantive reasonableness. A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). A sentence may be considered substantively unreasonable when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Id*. at 385.

Moreover, a district court is required to properly compute the advisory Guidelines range for consultation. *Hazelwood*, 398 F.3d at 801.

### 2. Argument

Wilson argues that the district court did not impose a reasonable sentence because it improperly calculated his Guidelines range by adding the obstruction enhancement and denying the reduction for acceptance of responsibility. Wilson says that the proper range should have been based upon an offense level of 35, and criminal history category of I, which yields a range of 168 to 210 months imprisonment.

Wilson next argues that his sentence was unreasonable because the district court based its decision on impermissible factors. Specifically, Wilson says that the district court unreasonably ignored the Guidelines as opposed to considering them in an advisory manner

13

when it stated that "since it's a non[G]uidelines sentence, I think that it would necessarily follow that the Court ignored the Guidelines and imposed the sentence that it did." (J.A. 207.)

### 3. Resolution

The district court properly considered the correct Guidelines range. As discussed in sections II.A. and II.B., the district court reasonably enhanced Wilson's offense level for obstruction of justice and reasonably denied his request for a reduction for acceptance of responsibility.

Next, Wilson's argument that the district court relied on impermissible factors by "ignoring" the Guidelines is meritless. Wilson takes the district court's comment out of context. The district court expressly stated that the 240-month sentence took into account its previous findings of the drug amount attributed to Wilson, as well as the section 3553(a) factors such as Wilson's lack of remorse and failure to accept responsibility. (J.A. 204-05.) The district court then went on to say that it was "ignoring" the Guidelines because it was agreeing to reduce Wilson's sentence at the parties' request. The district court immediately explained that, "[h]ad it stayed within the Guidelines, the sentence would have been higher." (J.A. 207.) Thus, the district court clearly maintained throughout the sentencing hearing that it was taking into account the Guidelines and section 3553(a) factors as the starting point for the sentence, then varying the sentence at the parties' joint request.

### III. CONCLUSION

For the reasons stated above, Wilson's sentence is AFFIRMED.